Argued and submitted December 14, 1983, reversed and remanded with instructions February 22, 1984

In the Matter of the Compensation of
Linda L. Reining, Claimant.

**REINING,**
*Petitioner,*

*v.*

**GEORGIA-PACIFIC CORPORATION,**
*Respondent.*

(80-01849; CA A28248)

676 P2d 926

Larry N. Sokol, Portland, argued the cause for petitioner. With him on the brief were Michael T. Garone, and Jolles, Sokol & Bernstein, P.C., Portland.

Deborah S. MacMillan, Portland, argued the cause for respondent. With her on the brief were Frank A. Moscato, and Moscato & Meyers, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant appeals from an order of the Workers' Compensation Board which affirmed the referee's denial of compensability. The issue is whether claimant proved by a preponderance of the evidence that her chronic urticaria (hives) is a compensable occupational disease under ORS 656.802(1)(a). We review *de novo*, ORS 656.298(6), and reverse and remand.

Claimant is 35 years old. It appears that she was free from any allergy symptoms until 1978 when she worked for a time in a cabinet-building facility and was exposed to cleaning solvent and glue. On that job, she developed "contact dermatitis," which cleared up with skin creams. The evidence is that that condition is a different disease process than urticaria.

Claimant began working for respondent in September, 1978. From September to January, 1979, she had no allergic reaction or symptoms. In January, she was transferred to a different job, which included steamcleaning glue booths and glue filters. She then developed symptoms which included an itchy rash on her arms, hoarseness, chest pains and difficulty in breathing.[1] She continued at the same job, trying different medications, until July, 1979. Between January, 1979, and July, 1982, she was seen by six doctors. Two of the doctors, Wilson and Morgan, specialize in allergies.[2]

In September, 1979, Dr. Wilson performed multiple scratch tests and reported a positive response to all 66 tests. He stated that the positive tests indicated that claimant's skin was reacting when the test was done, which made the test results invalid. His initial opinion was that the work environment likely contributed to claimant's urticaria and that it was probably in her best interests to avoid that exposure. In November, 1980, Dr. Wilson testified by deposition that, in a

---

[1] The hoarseness, chest pains and breathing difficulty were diagnosed as laryngitis secondary to bronchitis. Dr. Chowning, a specialist in otolaryngology, believed that the laryngitis and bronchitis were not work-related. Claimant does not contest that conclusion.

[2] Although we have reviewed all of the medical evidence, we have concentrated on the opinions of Drs. Wilson and Morgan, not only because of their specialties, but also because they were the only doctors to run substance tests on claimant.

medical sense, the work environment contributed to claimant's urticaria in that "when she goes there she works, perspires, gets warm, sweats, wears possibly heavier clothing and also she firmly believes that it makes her worse." He stated that "a combination of those events means that while at work claimant is worse." He could not find anything specifically in the work environment that caused hives, although he did not test claimant for sensitivity to the glue that she was exposed to. He stated that he could not substantiate that the mill environment was a direct cause of claimant's problem and that he did not believe that that environment was a direct cause of her urticaria. He also stated that for 80 percent of chronic urticaria patients no cause is isolated.

In September, 1980, claimant was seen by Dr. Morgan. He believed that claimant has a "very convincing history of increasing sensitivity to an exposure associated with her work at the mill." He saw her four times in May, 1982. He conducted four double-blind tests using glue from the mill and found that the tests "substantiated the fact that claimant is sensitive to some component or components of the glue." She also reacted positively to certain turpenes and sawdust. His opinion is that there is convincing evidence, both historical and observed, that claimant is acutely sensitive to exposures at the mill. Claimant testified that since leaving the mill she has been symptomatic only as the result of the allergy testing or when she has been in the vicinity of the mill.

■ ■ Claimant must show by a preponderance of the evidence that she has a compensable occupational disease. ORS 656.802(1)(a) defines "occupational disease":

> "Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular employment therein."

The referee found that claimant failed to prove by a preponderance of the evidence that the uticaria was caused by circumstances to which she is not ordinarily subjected or exposed other than during periods of regular employment, *James v. SAIF*, 290 Or 343, 624 P2d 565 (1980), and that the at-work conditions were the contributing cause of her disability, citing *SAIF v. Gygi*, 55 Or App 570, 639 P2d 655, *rev*

*den* 292 Or 825 (1982). The Board, with one member dissenting, agreed with the referee. We disagree.

There is no persuasive evidence that claimant had urticaria prior to cleaning glue booths and glue filters, nor is there credible evidence that she was exposed to any conditions off the job which could give rise to that condition. The evidence is that, when she is exposed on the job to glue substances, turpenes and sawdust, she becomes symptomatic. Those symptoms, even though temporary, reflect a worsening of the underlying disease. Importantly, her hives cleared up when she left her employment. Dr. Wilson's reports and testimony appear to be logically inconsistent. Initially, he was of the opinion that the mill environment is the culprit and that that work exposure should be avoided. Later, he concluded that there is little connection between the environment and the urticaria. He does agree that when claimant is at work she is worse. On the other hand, Dr. Morgan was the only one to test claimant's sensitivity to the glue substances to which she was regularly exposed. He concluded that she is highly sensitive to the glue and the other allergens present on the job. Although the specific cause of claimant's urticaria is not conclusively established, we are persuaded that she has shown by a preponderance of the evidence that the major contributing cause of her urticaria, if not the only cause, is the work environment. *Penifold v. SAIF*, 60 Or App 540, 654 P2d 1142 (1982).

Reversed and remanded with instructions to order acceptance of the claim.