Argued and submitted September 5, 1985, reversed; referee's order reinstated
April 16, 1986

In the Matter of the Compensation of
Maxine P. Robinson, Claimant.

ROBINSON,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(WCB 82-05121 and 81-10158; CA A34685)

717 P2d 1202

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief were Christopher D. Moore and Malagon & Associates, Eugene.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

This workers' compensation case is before us for the second time. In *Robinson v. SAIF,* 69 Or App 534, 686 P2d 1053, *rev den* 298 Or 238 (1984), we reversed the Board, finding that claimant had timely filed her claim. She petitions for judicial review of the Board's order on remand, reversing the referee's order and denying her occupational disease claim. The issue is whether her occupation caused a chemical sensitivity. On *de novo* review we find that claimant has satisfied her burden of proof. We reverse.

Claimant is 55 years old. She suffers from a hypersensitivity to certain chemicals: phenols, hydrocarbons and formaldehyde. The medical evidence establishes that a susceptible individual can become sensitized through exposure to a high concentration of those chemicals and, once sensitized, will suffer a reaction from much lower concentrations. Relevant to this appeal are the high concentrations of the chemicals found in mobile homes and carpeting and in the pressed wood, synthetics, waxes, oils and cleaners used in making and maintaining furniture. Furniture, carpeting and mobile homes go through a "gassing out" process whereby they release quantities of formaldehyde, phenol and hydrocarbons over a period of time. When the products are new, the amount of chemicals released is greatest.

Mobile homes apparently have a higher formaldehyde concentration than traditional homes. Claimant lived in a traditional home before 1971 and had new carpet installed in it in 1967. In 1971, she moved into a new mobile home furnished with new carpeting. She began working for Struther's Furniture (SAIF's insured) in March, 1975, in an often hot, poorly ventilated showroom with low ceilings in some areas. It had been remodeled with new carpeting and wallpaper. In October, 1975, the warehouse that supplied the store burned down. After that, new furniture was uncrated in the showroom each week. Claimant gradually began experiencing fatigue, headaches and dizziness. Her symptoms abated when she worked in another warehouse, which had high ceilings and large open doors and which was well ventilated. In the spring of 1977 she had new carpeting installed in her mobile home. She was laid off in December, 1978, and worked for Adamson's Furniture during the early part of 1979

but was forced to quit due to increasing fatigue, headaches and dizziness.

In 1980, Dr. Gambee, a clinical ecologist specializing in allergies, examined claimant, using a sublingual technique, and found a chemical sensitivity to phenol, hydrocarbon and formaldehyde. He stated:

"Since the work environment that [claimant] described to me, consisting of synthetic fabrics, furniture using particle board, poorly ventilated, no air conditioning, and uncomfortably warm, would all contribute to the gassing out process, then I would think that her environment could well be one in which one would become sensitized to chemicals.

"I do not feel that all of Mrs. Robinson's health problems are due to her work environment. There are other factors in her life and lifestyle that are deleterious to optimal health."

Gambee was unable to pinpoint whether claimant's problem was a result of, or just aggravated by, her work activity. Claimant testified that, after Gambee had identified the problems, she had obtained relief by avoiding exposure to synthetic materials. She had also experienced improvement after stopping work at Struther's.

Dr. Morgan, also a clinical ecologist specializing in allergies, examined claimant in June, 1981. He noted that claimant had found some relief from the sublingual antigens prescribed by Gambee. He stated,

"[Claimant's] history is, I believe, indicative of a typical case of susceptibility to environmental chemical exposures * * *. [Her] history indicates a definite deterioration in her state of health after being employed in the furniture store for a period of time. Daily exposure to the fumes emanating from new items of furniture are quite capable of inducing this type of sensitivity in a susceptible individual."

Dr. Jacobson, an allergist, examined her in October, 1981. In his report, he critized sublingual provocative testing and treatment and concluded:

"Therefore, I do not feel that the prior sublingual testing, diagnosis, and treatment of Mrs. Robinson is valid. In addition, I feel that there is a substantial question that her own environmental exposure to the 'allergens' (chemicals) isn't greater at home than it was at work. The patient has lived in a mobile home for ten years and had new carpets installed just

prior to the onset of symptoms. It is well documented that mobile homes have a higher concentration for [sic] formaldehyde and a variety of other chemicals used in the resins, adhesives, carpets, finishes, paneling, and etc [sic] The patient also had new carpet in her home about five years ago. If chemicals from new carpets at her place of employment were responsible for her symptoms then why not also at home."

Jacobson testified that, although a 48-hour patch test for formaldehyde sensitivity exists, he did not administer it, because claimant's symptoms were not typical. He admitted, however, that symptoms vary. He believed that claimant's symptoms did not correlate with exposure and disagreed with Morgan's and Gambee's diagnoses, because there was no objective measurement of exposure at either claimant's home or workplace.

Morgan reported in October, 1982, that, after seeing claimant in September, 1982, his conclusions were the same as he had reported earlier. He stated that mobile homes probably vary in formaldehyde levels, depending on the manufacturer. He compared exposure from her mobile home and her workplace, asserting:

"Moreover, there is a progressive outgassing which occurs as the mobile home ages. In the case of the furniture store, there is presumably a constant turnover of items, with new items being constantly brought in. This would presumably maintain a high constant level of textile chemical fumes in the air on an ongoing basis."

Morgan acknowledged the controversy surrounding the sublingual method but believed that the "overall available information tends to confirm sublingual testing as a valid procedure." He did not believe that the diagnosis rested solely on sublingual testing but stated that claimant's experiences and "the observations made relating her state of health to environmental conditions [were] much more impressive." Finally, he stated, "Based on all of the information available to me, I am still of the opinion that the exposure at Struther's Furniture Store is the *major contributing factor* to [claimant's] illness." (Emphasis supplied.) No doctor attributed claimant's sensitivity to employment at Adamson's. Gambee and Morgan found that that exposure simply caused a predictable exacerbation of symptoms.

The referee found Morgan and Gambee most persuasive. He noted that Jacobson had lost his objectivity. He found claimant's testimony to be credible and that it supported a determination that her level of exposure was extraordinary. He noted that "[e]ven Dr. Jacobson did not rebutt [*sic*] Dr. Morgan's conclusion that sensitivity can be induced by an extreme exposure." He concluded that claimant had sustained her burden of proof and had shown that exposure on the job at Struther's was the major contributing cause of her disease. He also concluded that, although her symptoms did not become so severe that they required her to quit work before her employment with Adamson's, there was no proof that that exposure caused or increased her sensitivity and that, therefore, the claim against Adamson's failed.

The Board reversed, stating that claimant had failed to sustain her burden of proof in the claim against Struthers. It noted that Gambee voiced no opinion on the major cause question; Morgan indicated only that claimant's work *could* contribute to her sensitivity;[1] and Jacobson enumerated several other significant, potentially causative, factors and opined that it was impossible to determine if the occupational exposure was the major cause of her disability.

■ Claimant must prove she has an occupational disease by a preponderance of the evidence. ORS 656.802(1)(a) defines "occupational disease" as

"Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

The Supreme Court has interpreted that definition to preclude a claim if the "off-the-job condition or exposure is a condition substantially the same as that on the job *when viewed as a cause* of the particular kind of disease claimed as an 'occupational disease.' " *James v. SAIF,* 290 Or 343, 350, 624 P2d 565 (1981). (Emphasis in original.)

■ The referee correctly concluded that the last injurious exposure rule does not apply to this case. Gambee and

---

[1] The Board apparently overlooked Morgan's statement in his report of October, 1982, that the exposure at Struther's was the "major contributing factor" to claimant's illness.

Morgan found that claimant had already become sensitized before begining work at Adamson's. Their view was that that employment only caused a predictable exacerbation of symptoms. This case is analogous to *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982). The "meat wrappers' asthma" involved in *Bracke* is characterized by symptoms that come and go, depending upon conditions of exposure, but once one is sensitized, the sensitization is permanent. The same is true in this case. Accordingly, *Bracke* instructs that Adamson's, the last employer, is not liable, because the employment "did not contribute to the cause of, aggravate, or exacerbate the underlying disease * * *. Rather, claimant's subsequent employment only activated the symptoms of a pre-existing disease." 293 Or at 250.

■ The difficulty in this case is that claimant has become sensitized to chemicals that are present throughout the environment. This type of disease can be analogized to mental illness caused by a type of stress found in both the workplace and at home. In those cases we "look either to the degree or to the quantum of stress on the job as compared to that off the job to resolve the issue of compensability." *Dethlefs v. Hyster Co.,* 295 Or 298, 308, 667 P2d 487 (1983). Similarly, in this case we must analyze the degree or quantum of exposure to the offending chemicals on and off the job to determine compensability. *When viewed as a cause of her sensitivity,* we find that claimant's exposure off the job was not substantially the same as her exposure on the job. Exposure to high concentrations of chemicals can sensitize a susceptible individual, and the evidence supports a finding that the concentrations were significantly higher on the job.

Claimant periodically had new carpeting installed in her home without any problems. She lived in a mobile home for approximately six years before the onset of symptoms. As a mobile home ages and "outgasses," it expels less and less quantities of chemicals. In contrast, at claimant's workplace, new furniture was continually received and uncrated in the showroom where she worked. Morgan's conclusion logically follows that "[t]his would presumably maintain a high constant level of textile chemical fumes in the air on an ongoing basis." In addition, the warmth and lack of ventilation at Struther's accelerated the gassing out process, releasing still more chemicals. She experienced symptoms when working in

the showroom but found relief when working in the well-ventilated warehouse or resting at home. These factors support the conclusion that work was the major contributing cause of the disease.

■ This case presents conflicting medical evidence from three doctors who specialize in allergies.[2] All agree that claimant's symptoms are not due to a true allergy. Morgan and Gambee, the treating physicians, diagnosed a chemical sensitivity. Although Gambee was unable to conclude whether claimant's "medical problem [is] a result of, or [is] just aggravated by," her employment, Morgan stated that her employment is the "major contributing factor" of her illness. Jacobson acknowledges claimant's "symptom complex," but his diagnosis is "etiology undetermined." He disparaged the technique used and the diagnoses and treatment prescribed by Gambee and Morgan. However, we note that their treatment accorded claimant some relief. In the absence of countervailing considerations, we accord more weight to the opinions of the treating physicians. *Weiland v. SAIF,* 64 Or App 810, 814, 669 P2d 1163 (1983).[3]

■ To recover, a claimant must prove that the conditions at work were the major contributing cause of the disability. *SAIF v. Gygi,* 55 Or App 570, 574, 639 P2d 655, *rev den* 292 Or 825 (1982). Although the specific chemical cause of claimant's sensitivity is not conclusively established, she has shown by a preponderance of the evidence that the major contributing cause was her work environment at Struthers, which exposed her to concentrations of chemicals much greater than she was ordinarily exposed to outside the course of employment. *See Reining v. Georgia-Pacific Corp.,* 67 Or App 124, 676 P2d 926 (1984).

Reversed; referee's order reinstated.

---

[2] Claimant was examined by other physicians as well, but they were unable to diagnose definitively the cause of her symptoms. We have reviewed all of the medical evidence but concentrate on the opinions of Morgan, Gambee and Jacobson because of their specialties and the fact that they addressed the chemical sensitivity issue.

[3] There is some controversy as to the efficacy of Gambee's and Morgan's testing and treatment methods, but claimant is not required to establish medical certainty. *Hutcheson v. Weyerhaeuser,* 288 Or 51, 55, 602 P2d 268 (1979).