## THERESA CANAVAN'S CASE.

No. 98-P-1253.

Suffolk. September 9, 1999. - December 1, 1999.

Present: ARMSTRONG, GILLERMAN, & PORADA, JJ.

Further appellate review granted, 430 Mass. 1115 (2000).

*Workers' Compensation Act,* Expert opinion, Proximate cause. *Evidence,* Expert opinion, Competency. *Witness,* Expert. *Multiple Chemical Sensitivity.*

In a workers' compensation case, the findings of the administrative judge demonstrated that he applied the appropriate analysis, following *Commonwealth* v. *Lanigan,* 419 Mass. 15, 26 (1994), in admitting in evidence the employee's medical expert's opinion regarding the diagnosis of multiple chemical sensitivity [299-301], and the judge did not err in admitting that expert's testimony on causation of the employee's injury and in adopting it over conflicting evidence [301-302].

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Matthew J. Walko* for the employer.

*Peter F. Brady, Jr.,* for the employee.

PORADA, J. The principal issue in this case is the admission in evidence of the opinions of the employee's medical expert on diagnosis, disability, and causation. The self-insurer, Brigham and Women's Hospital, claims that this evidence, under the test set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and adopted by our Supreme Judicial Court in *Commonwealth* v. *Lanigan,* 419 Mass. 15, 26 (1994), should not have been admitted by an administrative judge (judge) in a workers' compensation hearing to determine the self-insurer's request to discontinue compensation and the employee's request for payment of various medical expenses. Based on the testimony of the employee and her medical expert, the judge ordered the insurer to pay medical expenses incurred by the employee under G. L. c. 152, §§ 13 and 30, and denied the self-insurer's request to discontinue compensation. The judge's

decision was summarily affirmed by the Department of Industrial Accidents Reviewing Board (board), and the self-insurer filed this appeal.

The employee is a registered nurse. In September, 1983, she went to work as a staff nurse in the recovery room at Brigham and Women's Hospital (hospital). In July, 1990, she became an operating room nurse at the hospital. During her employment in the operating room, the employee was exposed to various chemicals such as ethylene oxide, formaldehyde, diesel fuel, and other chemicals used in cleaning solutions. On August 6, 1993, she worked a ten-hour shift in operating room sixteen. At the end of her shift on that day, she experienced a severe headache and nasal stuffiness. When she awoke the following morning, she had a fever, her nose was red, and her right cheek was swollen. She was seen by a physician at the hospital on August 9, 1993, who confirmed those conditions. The physician prescribed antibiotics. She was diagnosed as suffering from chronic sinusitis and was considered disabled. The self-insurer accepted her medical condition as work related and has been paying workers' compensation to date.

The employee was examined by Dr. LaCava in June, 1994. He is certified in pediatrics by the American Board of Medical Specialties and certified in environmental medicine by the American Board of Environmental Physicians, which is not recognized by the American Board of Medical Specialties. Dr. LaCava took a history from the employee, performed a physical examination, and conducted a number of diagnostic tests. In his opinion, the employee suffers from arthritis, paresthesias, organic brain syndrome, chemical induced headaches, immuno-deficiency, and multiple chemical sensitivities secondary to chemical poisoning at the hospital. He defines multiple chemical sensitivity as a "systemic reaction of the body with multiple symptoms to multiple kinds of chemicals, which may be chemically unrelated, which are commonly present in the every day working and living environment where that environment has not been meticulously cleaned up and had the chemical sources removed." In Dr. LaCava's opinion, the employee's medical condition is directly caused by the multiple chemicals that she has been exposed to at the hospital during the course of her employment and renders her totally disabled. For the treatment of her medical condition, Dr. LaCava has prescribed intravenous infusions of multi-vitamins, in particular vitamin C, oral nutrient supplements, antibiotics, and heat and sauna therapy.

The employee was examined on two separate occasions by Dr. Acetta for the self-insurer. Dr. Acetta is board certified by the American Board of Medical Specialties in allergy and immunology. He diagnosed the employee as suffering from chronic nonallergic rhinitis caused by nonspecific stimuli in one's every day environment. Dr. Acetta is of the opinion that this condition is not related to her work at the hospital and is' not physically disabling. He also opines that there is no medical evidence of chemical poisoning in this case and avers that multiple chemical sensitivities is "not accepted as a diagnostic disease by mainstream allergists/immunologists and occupational medicine physicians." Further, Dr. Acetta is of the opinion that the employee suffers from Munchausen syndrome, a psychological disorder which accounts for her many symptoms.

The self-insurer had objected to the admissibility of Dr. LaCava's opinions relating to diagnosis, disability, and causation during Dr. LaCava's deposition, specifying foundation as its ground, and, subsequently, had argued to the judge that those opinions should be either struck or excluded from evidence because they lacked the necessary reliability under the *Lanigan* standard. *Commonwealth* v. *Lanigan*, 419 Mass. at 26. The judge overruled those objections. Although the employee asserts that the issue of the admissibility of those opinions was not sufficiently preserved for review, we conclude that the steps taken by the self-insurer preserved the issue for review by us.

There is no question that the rules of evidence applicable to the courts of this Commonwealth governed the admissibility of Dr. LaCava's opinions relating to diagnosis, disability, and causation. 452 Code Mass. Regs. § 1.11(5) (1993). Under the *Daubert* test adopted by our Supreme Judicial Court in *Lanigan*, a party seeking to introduce scientific evidence in a court must lay a foundation either by showing that the underlying scientific theory is generally accepted within the relevant scientific community or by a showing that the theory is reliable or valid through other means. *Commonwealth* v. *Sands*, 424 Mass. 184, 185-186 (1997). Specifically, the self-insurer argues that the *Lanigan* analysis is applicable because there is no general acceptance in the medical community of the diagnosis of multiple chemical sensitivities as a clinical entity or of its causation. While the self-insurer's premise about multiple

chemical sensitivity may well be accurate,[1] general acceptance within the medical community is only one of the many factors under *Lanigan* that can be examined to determine whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue. *Higgins* v. *Delta Elevator Serv. Corp.*, 45 Mass. App. Ct. 643, 646 (1998). Among other factors that can be applied are whether the theory or technique is capable of being tested and whether the theory or technique has been published or subjected to peer review. *Commonwealth* v. *Lanigan*, 419 Mass. at 25.

Although the judge never explicitly referred to the *Lanigan* analysis, his findings indicate that he applied that analysis in his decision. Among those findings were his reference to the diagnostic tests which Dr. LaCava performed and described as generally accepted in the community of doctors who understand toxicity (not, for example, allergists such as Dr. Acetta), and the other laboratory tests which the judge found supportive of Dr. LaCava's diagnosis; and, in addition, his inclusion in his decision of Dr. Acetta's testimony that there were no peer review studies which support the diagnosis of multiple chemical sensitivity and that the disease was not accepted by mainstream

---

[1]In cases in which a claimant has sought to recover for personal injuries resulting from exposure to chemicals, the Federal courts have generally held that expert testimony on multiple chemical sensitivity fails to meet the standard of evidentiary reliability established in *Daubert*. See *Bradley* v. *Brown*, 852 F. Supp. 690, 700 (N.D. Ind.), aff'd, 42 F.3d 434 (7th Cir. 1994); *Summers* v. *Missouri Pac. R.R. Sys.*, 897 F. Supp. 533, 542 (E.D. Okla. 1995), aff'd in relevant part, 132 F.3d 599, 603-604 (10th Cir. 1997); *Sanderson* v. *International Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 1002 (C.D. Cal. 1996); *Coffin* v. *Orkin Exterminating Co.*, 20 F. Supp. 2d 107 (D. Me. 1998). But see *Kouril* v. *Bowen*, 912 F.2d 971, 974 (8th Cir. 1990) (award of social security disability benefits upheld for multiple chemical sensitivity); *Kornock* v. *Harris*, 648 F.2d 525 (9th Cir. 1980) (same); *Creamer* v. *Callahan*, 981 F. Supp. 703, 705 (D. Mass. 1997) (on appeal, commissioner stipulated that the Social Security Administration "recognize[d] multiple chemical sensitivity as a medically determinable impairment"); and *Robinson* v. *SAIF Corp.*, 78 Or. App. 581 (1986), and *Appeal of Kehoe*, 139 N.H. 24 (1994), in which both the Oregon and New Hampshire courts recognized that workers' compensation benefits could properly be awarded for work related multiple chemical sensitivities. See also Galbato, Multiple Chemical Sensitivity: Does Daubert v. Merrell Dow Pharmaceuticals, Inc. Warrant Another Look at Clinical Ecology?, 48 Syracuse L. Rev. 261, 286-294 (1998); Magill & Suruda, Multiple Chemical Sensitivity Syndrome, 58 Am. Fam. Physician 721 (September 1, 1998).

allergists/immunologists and occupational medical physicians. Further, the judge could properly take into consideration Dr. LaCava's knowledge, training and clinical experience, his review of the employee's history and medical records, his physical examination of the employee, and the diagnostic and laboratory tests performed by him on the employee in determining whether Dr. LaCava's opinions were admissible under a *Lanigan* analysis. Compare *Adoption of Hugo*, 428 Mass. 219, 234 (1998), cert. denied sub nom. *Hugo P.* v. *George P.*, 526 U.S. 1034 (1999).

In any event, it is generally understood that certain expert testimony based on personal observations, clinical experience, or generally accepted scientific techniques need not be subject to the *Lanigan* analysis. *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 15 & n.15 (1998). It is well established that a treating physician may testify to a patient's "ailments, bodily condition, and extent to which a person was affected [by them]." *Kramer* v. *John Hancock Mut. Life Ins. Co.*, 336 Mass. 465, 467 (1957). In this case, the employee had introduced evidence that Dr. LaCava was one of her treating physicians and as such he had familiarized himself with her medical and work history, performed a physical examination of her, and had conducted a number of diagnostic tests. Based on evidence of Dr. LaCava's personal observations, his clinical experience, and the methodology pursued by him, the employee had laid a sufficient foundation for the admission of his expert opinion testimony regarding her diagnosis and disability. What weight was to be given to those opinions remained for the fact finder. *Commonwealth* v. *Lanigan*, 419 Mass. at 26. Consequently, whether we apply the more rigorous *Lanigan* analysis or the principles just stated, the judge did not err in admitting the medical expert's opinions on diagnosis or disability.

The more troubling issue in this case is the admissibility of Dr. LaCava's opinion on causation. While Dr. LaCava did testify to a reasonable degree of medical certainty that the employee's diagnosis of multiple chemical sensitivity was caused by her exposure to organic compounds at the hospital, he admitted that the cause of the disease is in dispute. However, he qualified this opinion by stating that the factors which cause the disease are known, but the weight to be given to those factors varies in each individual case. He asserted, nevertheless, that in the case of this employee, there can be no doubt that the controlling fac-

tor is her exposure to organic chemicals in her workplace because he has other patients who are similarly afflicted who worked in the same pod at the hospital. The self-insurer argues that this opinion should be rejected not only because it is unreliable and speculative but also because the expert did not know the nature, amount, and duration of exposure of the chemicals to which the employee was exposed.

In any claim for workers' compensation, the employee has the burden of proving a causal relationship, but the employee is "not required to exclude all other possible sources of [her] injury." *Rodrigues's Case*, 296 Mass. 192, 195 (1936). "It is sufficient if the evidence afforded the basis for the reasonable inference that [the employee's] injury resulted from [her] work." *Ibid.* See *O'Donnell's Case*, 237 Mass. 164, 166 (1921). As the question of medical causation is "beyond the . . . knowledge of the ordinary layman, . . . proof of it must rest upon expert medical testimony." *Hachadourian's Case*, 340 Mass. 81, 85 (1959). Here, the employee's medical expert was well aware and informed about the nature of the chemicals to which the employee had been exposed during her tenure of employment. Based upon that knowledge and the diagnostic tests that he performed, he could reasonably infer that her condition was caused by her exposure to chemicals in the workplace. See *O'Donnell's Case*, *supra* at 165-166; *Wax's Case*, 357 Mass. 599, 600-602 (1970). The amount and duration of that exposure need not have been proved. See *Duggan's Case*, 315 Mass. 355, 357-359 (1944); *Watson's Case*, 322 Mass. 581, 583-584 (1948); *Brek's Case*, 335 Mass. 144, 146-148 (1956); *Casey's Case*, 6 Mass. App. Ct. 859, 859 (1978). Further, the judge could properly take into account that Dr. LaCava's opinion was buttressed by his knowledge that other patients of his who had been similarly employed in the same pod at the hospital were similarly afflicted. See *Brek's Case*, 335 Mass. at 149 (physician permitted to testify that other patients had been victims of asbestos from the same plant). In those circumstances, the judge did not err in admitting Dr. LaCava's opinion on causation and adopting it over that of the conflicting testimony of Dr. Acetta. *Adams's Case*, 339 Mass. 772, 772 (1959).

The self-insurer also argues that the employee has failed to prove that the intravenous infusions of vitamin C, antibiotic regimen, oral nutrients, and physical therapy prescribed by Dr. LaCava were reasonable and necessary. Based upon the

testimony of the employee and Dr. LaCava and the medical report of Dr. LaCava in evidence, which the judge credited, there was adequate evidentiary support for the judge to have concluded that the medical expenses incurred by the employee were reasonable and necessary for the treatment of her work related medical condition. See *Scheffler's Case*, 419 Mass. 251, 258 (1994). The decision of the board is affirmed.

*So ordered.*