Argued and submitted November 4, 1985, reversed and remanded with instructions February 26, 1986

In the Matter of the Compensation of
Brian Palmer, Claimant.

## PALMER,
*Petitioner,*

*v.*

## SAIF CORPORATION et al,
*Respondents.*

(WCB 83-06780; CA A34304)

714 P2d 1102

David C. Force, Eugene, argued the cause and submitted the briefs for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant seeks review of a Workers' Compensation Board order which affirmed the referee's denial of compensability. The issue is whether claimant proved by a preponderance of the evidence that his sinusitis is a compensable occupational disease. ORS 656.802(1)(a). We reverse and remand.

Claimant worked at Duco-Lam, Inc., from December, 1977, to March, 1982,[1] primarily as a sawyer on the finish end. His duties included running bandsaws, electric handsaws and chainsaws and puttying and scraping laminated beams. As a result, he was exposed to varying amounts of fine airborne sawdust. He smoked a pack of cigarettes every one or two weeks.

Early in 1982, claimant saw Dr. Wiltse and complained of headaches. Wiltse referred claimant to Dr. Johansen, an otolaryngologist. On March 22, 1982, Johansen wrote to Wiltse:

> "[Claimant], a 28 year old white male, was seen in my office with the history of having persistent headaches for the past several weeks. The patient had been seen by you and placed on antibiotics including Keflex.
>
> "The patient complains of moderate drainage into his throat but does complain of fullness of the cheek areas and head areas.
>
> "The patient also apparently saw a chiropractor for treatment.
>
> "The patient has had radiograms taken and these do reveal pansinusitis with involvement of the paranasal-sinuses. The patient's headache apparently is rather severe. This does seem to bother him greatly.
>
> "Examination today reveals the nasal turbinates are edematous. A vasoconstrictor was applied. We do see exudate present in both frontal sinus areas, left over right. Nasopharynx shows slight to moderate edema. Oral cavity, pharynx, larynx and neck normal. Transillumination does reveal marked haziness of the paranasal sinus areas.

---

[1] Claimant was actually employed at Duco-Lam until he was laid off in May, 1982. However, claimant did not return to work after a motorcycle accident in late March.

> "Impression: Acute frontal sinusitis. Acute maxillary sinusitis.

> "Therapy: Proetz displacement using Pontocaine anesthesia.[2] He was then placed on Ampicillin and Tyzine nasal spray. We will see him back for follow-up care."

Claimant stopped working at Duco-Lam in late March, 1982, and did not work again until December. He also quit smoking during that time. Claimant testified that, during the period of unemployment, his sinusitis symptoms "almost cleared up" but that he still took antibiotics when they would occasionally flare up.

In December, 1982, claimant was employed by Tyee Timbers, doing the same work as at Duco-Lam. He also resumed smoking. His sinus condition worsened over the next few months. He again consulted Johansen, who treated the problem with another Proetz displacement, medication and finally with surgery on March 25, 1983. On May 5, 1983, claimant filed a claim against Duco-Lam; SAIF denied it on July 8.[3]

Johansen testified that sinusitis is an infection of the sinus cavity. He explained that exposure to sawdust or dust, cigarette smoke or other allergens can cause the nose to run, producing a discharge which blocks the sinus opening. He further explained that

> "basically how sinus disease commences is by a blockage of sinus drainage—the so-called ostia. * * * This will lead to chronic changes and thickening of the mucosa lining, of which he had an X-ray, and the diseased lining, more or less, of his sinus cavities."

Johansen testified that, if claimant's exposure to sawdust was minimal, it would not be a major contributing cause of his sinusitis but, if he had a heavy sawdust exposure, then it would be a major contributing cause. He also testified that heavy sawdust exposure could cause both the disease and a worsening of symptoms. He defined "heavy" sawdust

---

[2] "Proetz displacement" is also referred to in the record as "Proetz sinus aspiration."

[3] SAIF did not pay any interim compensation. ORS 656.262(4). The referee awarded interim compensation, as well as penalties and attorney fees for that failure to pay. The Board affirmed. Those awards are not challenged on review.

exposure as large amounts of sawdust in the nose, causing blockage with nasal congestion.

Claimant testified:

> "I worked on the finish end, and whenever we ran the saws or anything, it would create a lot of sawdust, which would be caked all over the floor and all over you, and you would have to breathe it. Every once in a while, we'd have to stop what we were doing and go over to the air hose and blow the sawdust off of our glasses or whatever, just so we could carry it on. Get away from the sawdust a little bit, so we could breathe a little better."

He also testified that, because he is left-handed, he stands on the side of the saw where the sawdust discharges in order to get a true saw cut. Claimant's wife testified that, when he came home from work, he would have sawdust in his hair, the cuffs of his pants, down his neck and in his shirt pockets, and that sawdust was present on tissue when he blew his nose. A former Duco-Lam employe testified that, on an average, there were two hours of sawing per day in the finish end and that the saws kick sawdust onto the face of the workman. He also testified that it was common for finish end workers to blow their noses to get rid of sawdust. Two current employes testified that they get some sawdust, but not "a whole lot," in their hair and on their faces when they saw.[4]

In order to establish that his sinusitis is a compensable occupational disease, claimant must prove by a preponderance of the evidence that his exposure to sawdust at Duco-Lam was the major contributing cause of his sinusitis. *Reining v. Georgia-Pacific Corp.,* 67 Or App 124, 128, 676 P2d 926 (1984); *Penifold v. SAIF,* 60 Or App 540, 544, 654 P2d 1142 (1982). The referee and the Board determined that claimant did not meet that burden. We disagree.

Johansen testified:

---

[4] Sawdust sample tests were taken at the Duco-Lam plant. The tests showed that sawdust levels in the plant were seven to thirteen percent of the allowable Oregon limit. There was conflicting testimony over whether the tests were conducted on an "average" day. We need not resolve that conflict, because there is no evidence explaining what those test results mean in terms of sawdust accumulating in claimant's nose. The mere fact that sawdust levels were well within legal limits does not mean that the sawdust did not cause claimant's sinusitis. We instead rely on the testimony of current and former employes.

"Q [Claimant's attorney]: Assuming Mr. Palmer was exposed to sawdust to such an extent that it actually gathered in his hair and his nostrils to a palpable extent and became a grime-like substance on his face and hands, and he had to shake it out of his clothes at the end of the day. Does that sound like the kind of exposure that could have an impact on a sinus condition either by developing it or exacerbating it?

"A: Yes, I would say so, as he is exposed to this much sawdust, and it would certainly seem to aggravate his condition.

"Q: Do you think it would be the major aggravating device—major contributing cause—to the need for Mr. Palmer's surgery?

"A: Well, this would be rather difficult to state actually without, you know, going into his complete past background, and *I just have to say it would certainly be a major factor in producing the sinus disease.*

"* * * * *.

"Q: We know he was a smoker, but not necessarily a particularly heavy smoker.

"A: Yes.

"Q: Given that and given an exposure that has been described and allowing for the fact that we are not in a laboratory, it is reasonable to state that the employment was probably the major contributing cause; accepting my hypothetical that I have given you.

"A: I would say so, if you went by his history, he seemed to be aggravated a great deal by the sawdust, producing nasal stuffiness and nasal blockage." (Emphasis supplied.)

The lay testimony concerning sawdust levels at Duco-Lam supports the hypothetical posed to Johansen. On the basis of that lay testimony and on Johansen's opinion, we find that claimant's employment at Duco-Lam was the major contributing cause of his sinusitis, which eventually required surgery.

The referee found Johansen's opinion unpersuasive:

"To a lay person it would appear that in terms of the condition that prompted surgery there would be great significance to the fact that the claimant's symptoms had 'almost cleared up', then commenced again and worsened after he began working for [Tyee Timbers]. However, nowhere does it appear that Dr. Johansen, the only doctor who has expressed an opinion on the subject, was even *aware* of such a history.

Apparently the doctor did not consider it and therefore I feel that a major element of history has been omitted from his opinion and it cannot be persuasive." (Emphasis in original.)[5]

The referee could have been troubled either (1) because claimant's sinusitis theoretically[6] might have been cured (without surgery) during that period, with the later employment causing it anew, or (2) because Johansen testified that it is possible that a person could have several episodes of rhinitis (nasal congestion), with the last one developing into sinusitis, *i.e.,* the last one here being at Tyee Timbers.

As to the first, we accept claimant's testimony that, although the symptoms "almost cleared up," he continued to take antibiotics during the period of unemployment. That testimony persuades us that his sinusitis was not cured while he was unemployed. As to the second, Johansen diagnosed sinusitis while claimant worked at Duco-Lam. That diagnosis persuades us that claimant was not suffering merely from rhinitis at Duco-Lam.

Other than those two possible objections, we see no reason why Johansen's testimony should be accorded little weight simply because he does not appear to have been aware of claimant's entire history. While we have held that a physician's opinion is entitled to little weight when it is based on incomplete facts, *see, e.g., Somers v. SAIF,* 77 Or App 259, 712 P2d 179 (1986), the omitted facts must have some bearing on the relevant issue. That logical connection is absent here and, therefore, we find Johansen's testimony persuasive.

Reversed and remanded with instructions to accept the claim.

---

[5] Claimant states in his brief:

"The Referee's conclusion that the disease arose out of Claimant's employment by Tyee Timbers between December of 1982 and February 28, 1983 simply makes no logical sense on this record."

We can find no such conclusion in the referee's order. The referee concluded only that Johansen's opinion was not persuasive because the record does not show that he was aware of claimant's entire history.

[6] There was no testimony by Johansen or anyone else on whether this was a possibility.