Argued and submitted October 30, 2002, affirmed February 19, 2003

In the Matter of the Compensation of
Christopher J. Wehren, Claimant.

JACKSON COUNTY,
*Petitioner,*

*v.*

Christopher J. WEHREN,
*Respondent.*

00-01180 and 99-01486; A114211

63 P3d 1233

George W. Goodman argued the cause for petitioner. With him on the opening brief were James W. Moller and Cummins, Goodman, Fish, Denley & Vickers, P.C. With him on the reply brief was James W. Moller.

Robert F. Webber argued the cause for respondent. With him on the brief was Black, Chapman, Webber, Stevens & Petersen.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Faced with conflicting medical opinions as to whether claimant's recurrent neck and shoulder pain resulted in major part from an earlier compensable injury, the Workers' Compensation Board (board) accepted the opinion that it did. On judicial review, employer argues that the accepted opinion was not based on a sufficiently complete medical history and that it did not adequately evaluate the relative contribution of all potentially causative events. We review legal issues for errors of law and factual issues for substantial evidence. ORS 183.482(8)(a), (c). Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). We affirm.

The following facts are not disputed. Claimant worked for Jackson County on a road crew. He spent the day of November 2, 1992, digging post holes. The next morning, he experienced neck pain. During treatment, he complained of pain in his neck as well as in his left and right shoulders. Employer accepted the disabling cervical strain as a compensable injury.

About one year later, in September 1993, claimant attempted to hang himself. Standing on the ground with one end of an electrical cord attached to a tree limb and the other around his neck, he fell forward. A friend who was present at the time quickly cut him loose. After three days in the hospital for psychiatric observation and treatment, he was discharged with a diagnosis of abrasion and neck strain.

A few months later, in January 1994, claimant again spent time at work digging post holes and again experienced pain in the aftermath. He filed a claim for a new injury. The claim was denied and, after physical therapy, he returned to work without further impairment. A year passed, and once again, in March 1995, claimant reported a recurrence of neck symptoms. In October, Dr. Thompson examined claimant for employer. Based on an exam and an oral history that did not include the attempted hanging, Thompson diagnosed neck strain and identified the 1992 compensable injury as the

major contributing cause. However, once he learned of the attempted hanging, he changed his opinion and concluded not only that the hanging incident in 1993 was the major contributing cause of claimant's neck problems but that the original 1992 problems were caused in major part by "idiopathic torticollis," that is, a twisted neck of unknown cause.

The incident giving rise to the present claim occurred in September 1998, after a recurrence of symptoms following repetitive activity at work. Claimant's treating physician diagnosed a chronic cervical strain and referred claimant to Dr. Grant for follow-up. At that point, conflicting medical opinions began to emerge. Dr. Woodward, for employer, described claimant's condition as idiopathic chronic neck pain and stated that it was not related to the 1992 incident or other work activities. Grant then examined claimant, took an oral history, and diagnosed "myofascial pain syndrome," caused in major part by the compensable 1992 neck strain. He described that condition as follows:

> "Myofascial pain syndrome is a chronic muscular problem usually brought on by an acute injury or a chronic overuse type of injury. It is different from a muscular strain in that a strain is usually self-limiting, while as myofascial pain problems may extend over lengthy periods of time. The persistence of myofascial pain problems is brought about by what is called a 'myofascial cycle.' An injury or overuse will initially cause pain, which provokes muscular tightness. The tightness over a period of time causes further pain which again provokes tightness. This self-perpetuating cycle is what can cause myofascial difficulties to last for months or even years."

Myofascial pain syndrome is diagnosed when palpating so-called "trigger points" causes pain at the points themselves and elsewhere as well. Woodward, for employer, submitted a report challenging Grant's diagnosis and referring to "myofascial pain syndrome" as a "contentious" diagnosis in the medical community. Grant replied with a lengthy point-by-point defense, arguing that Woodward's opinions were outdated and citing a plethora of texts and journal articles supporting his own views. On February 14, 2000, claimant

asked employer to accept "myofascial pain syndrome." Employer denied the request.

A hearing ensued. The administrative law judge (ALJ) evaluated all of the medical opinions and found that Grant's was the most persuasive. Employer appealed to the board, attacking the ALJ's reliance on Grant's opinion for two asserted defects: first, that the ALJ erred in finding that Grant's opinion was based on a complete medical history; and second, that the ALJ did not sufficiently address other potential causes of claimant's condition before deciding that it was caused in major part by myofascial pain syndrome stemming from the 1992 injury. The board affirmed and, on reconsideration, reaffirmed.

 Our resolution of this case is governed by several precepts. First, claimant has the burden of proving that his compensable 1992 injury is the major contributing cause of his current condition, that is, the current condition is a "consequential condition" under ORS 656.005(7)(a)(A). *State Farm Ins. Co. v. Lyda*, 150 Or App 554, 559, 946 P2d 685 (1997), *rev den*, 327 Or 82 (1998). Second, determining causation is a complex medical question that can be resolved only by expert medical opinion. *Uris v. Compensation Department*, 247 Or 420, 424, 427 P2d 753 (1967); *Barnett v. SAIF*, 122 Or App 279, 283, 857 P2d 228 (1993). Third, to be persuasive, the opinion regarding the "major contributing cause" of a consequential condition must evaluate the relative contribution of other potential causes to determine whether the compensable injury is primary. *Dietz v. Ramuda*, 130 Or App 397, 401, 882 P2d 618 (1994) (stating rule regarding combined conditions); *SAIF v. Willcutt*, 160 Or App 568, 574, 981 P2d 1288 (1999) (applying *Dietz* to consequential conditions). Fourth, when medical experts disagree, the board should place more emphasis on opinions that are well reasoned and based on the most complete relevant information. Fifth, we review the board's finding that an expert opinion evaluates alternative potential causes and is based on sufficiently complete information for substantial evidence. ORS 183.482(8)(c). Sixth, if there are doctors on both sides of a medical issue, whichever way the board finds the facts will probably have substantial evidentiary support, and we will

reverse the board "only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the board finds the other without giving a persuasive explanation." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

Before this court, employer renews its attack on the board's acceptance of Grant's opinion instead of Thompson's. In particular, employer argues that no substantial evidence supports the board's conclusion that Grant had a complete and accurate history when he rendered his opinion that the 1992 incident was the major contributing cause of claimant's 1998 condition; that no substantial evidence supports the board's conclusion that Grant properly evaluated the various potential contributing causes of the 1998 condition; and that the board erred in discounting Thompson's opinion. Under the substantive principles and standards of review described above, we conclude that none of those criticisms has merit.

The board made the following findings regarding the completeness of the history on which Grant based his opinion:

> "During Dr. Grant's May 27, 1999 examination of claimant, he took a correct history of 'initial problems' beginning with claimant's 1992 compensable injury 'digging post holes in granite.' Dr. Grant also noted 'recurrent symptoms in 1994 associated with some heavy work activities.' Finally, Dr. Grant reported a history of 'recurrent symptoms beginning 9/14/98' again associated with vigorous work activity. Claimant's counsel later provided Dr. Grant with medical records surrounding claimant's 1993 suicide attempt. We therefore find that Dr. Grant had a complete history of claimant's various potentially-causative neck injuries."

(Citations omitted.) Employer argues that those facts do not support the conclusion that Grant had a complete history because they imply he knew of neither the noncompensable 1995 episode of neck pain nor of events that occurred before 1992.

We note preliminarily that, contrary to employer's assertion, a "complete history" is not a necessary prerequisite to a persuasive opinion, although it certainly may contribute to persuasiveness. We note further that claimant testified

that he told Grant about constant neck and shoulder pain since 1992. The board could have taken that testimony as indicating he told Grant about all his episodes of neck and shoulder pain. Indeed, employer itself argued to the board that Grant "knew that claimant had experienced recurrent symptoms in 1993, 1994, *1995*, and 1998." (Emphasis added.)

██ In any event, to be "complete," a history needs to contain only relevant information. *Palmer v. SAIF*, 78 Or App 151, 157, 714 P2d 1102 (1986). A history is complete, in other words, if it includes sufficient information on which to base the opinion and does not exclude information that would make the opinion less credible. Here, Grant diagnosed recurring cycles of pain and offered the opinion that they were initially caused by the acute compensable injury in 1992. The board apparently concluded that Grant's unawareness of certain incidents was not a significant fact, and substantial evidence supports that conclusion: those incidents resulted in back injuries, not neck injuries. Further, in that Grant diagnosed recurring cycles of pain, the fact that he may have been unaware of a noncompensable incident in 1995 does nothing to detract from the force of his diagnosis or his opinion about major contributing cause. If anything, noting another incident of cervical pain after 1992 would reinforce his opinion. We therefore conclude that the board's finding that Grant's opinion was based on a complete relevant history is supported by substantial evidence.

█ Employer also argues that no substantial evidence supports the board's conclusion that Grant "evaluate[d] the relative contribution of different causes of an injury or disease and decid[ed] which is the *primary* cause." *Dietz*, 130 Or App at 401 (emphasis in original). The board addressed that issue in response to employer's request for reconsideration:

"[W]e find that Dr. Grant considered all potential contributing factors, based on the following reasoning.

"Dr. Grant agreed with the statement that 'based on the history contained in your report of May 27, 1999, you felt the original work injury in 1992 was the major cause of [claimant's] post traumatic pain syndrome in his neck. Your opinion was based on the fact that [claimant's] history indicated no prior problems before 1992 and sporadic problems

since that time.' As explained above, Dr. Grant's May 27, 1999 report contained an accurate recitation of claimant's history including potentially contributory 1994 and 1998 work activity (minus the 1993 suicide attempt, which history was later provided). Dr. Grant agreed with the above statement; *i.e.*, that he reached his opinion after considering these various activities noted in his initial history as well as the 1993 suicide attempt.

"Dr. Grant's opinion was that, despite these intervening incidents, claimant's 1992 injury was the cause of the 'myofascial cycle,' resulting in his myofascial pain problems. Dr. Grant also agreed with the reasoning expressed in claimant's attorney's letter that claimant's descriptions of pain in 1999 were similar to those noted in 1992. We therefore disagree with the employer's contention that Dr. Grant's conclusions lack reasoning. * * * [W]e find that Dr. Grant's opinion considers all potentially causative factors and is persuasive."

(Citations omitted.)

The board's opinion accurately states what Grant did and did not consider as potential major contributing causes of claimant's 1998 condition. He did consider the 1992 injury and "sporadic problems since that time" including the 1993 suicide attempt, the 1994 work activity, and the 1998 work activity. He did not expressly indicate that he had considered the 1995 episode of neck and shoulder pain. We could, perhaps, fault the board for not giving significance to that omission if any medical expert ever suggested that the 1995 episode, which was determined to be noncompensable, was the major contributing cause. That suggestion, however, does not appear in the record.

Indeed, the record contains only two medical opinions on the cause of claimant's 1998 condition: Grant's explanation that its major contributing cause was the traumatic 1992 injury, which began the myofascial pain cycle, and the explanation of Woodward and Thompson that the intermittent pain was "idiopathic," that is, of unknown origin. Although other possible causative events occurred, no medical expert suggested any of them as the major contributing cause. By insisting that his own diagnosis of post-traumatic myofascial pain syndrome was correct, and doing so after

reviewing Woodward's critique of his opinion, Grant clearly considered and rejected the only other proposed major contributing cause of claimant's condition: that it had no known major contributing cause.

When the alternative to an expert's opinion on major contributing cause is another expert's opinion that no such cause is known or knowable, *Dietz* does not require the first expert to propose and then reject some set of hypothetical causes. Substantial evidence, then, supports the board's finding. Grant satisfied the requirement to consider and evaluate the suggested alternative to his conclusion that the 1992 injury was the major contributing cause.

■ Finally, employer argues that the board erred in discounting the persuasiveness of Thompson's opinion. According to employer, the stated bases for the board's treatment of Thompson's opinion are mistaken. We need not dwell on this assignment of error. Reduced to its essence, Thompson's opinion was that claimant's neck and shoulder problems are of idiopathic origin. Grant's opinion was that the problems stem from the 1992 injury, which triggered a myofascial cycle. Thompson agreed with the statement that the only difference between his opinion and Grant's was that he believed claimant's pain to be idiopathic while Grant believed it to be post-traumatic. Both doctors took oral histories and performed tests. Both opinions are lucid and carefully written. Both cite extensively to the literature. We may or may not find one more or less persuasive than the other, but we cannot say that "the credible evidence apparently weighs overwhelmingly in favor of one finding * * *." *Armstrong*, 90 Or App at 206.

Affirmed.