Argued and submitted November 4, 2003, affirmed June 9, 2004

In the Matter of the Compensation of
Tina Q. May, Claimant.

SAIF CORPORATION
and Department of Corrections,
*Petitioners,*

*v.*

Tina Q. MAY,
*Respondent.*

00-02883; A119157

91 P3d 802

David L. Runner, Special Assistant Attorney General, argued the cause and filed the briefs for petitioners. With him on the reply brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

James W. Moller argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

**DEITS, C. J.**

SAIF seeks judicial review of an order of the Workers' Compensation Board setting aside SAIF's denial of claimant's occupational disease claim for a mental disorder. SAIF also seeks reversal of that portion of the board's order that awarded claimant insurer-paid attorney fees of $15,000 for services rendered at the hearing. We conclude that the board did not err in holding that the claim was compensable or in its award of attorney fees. We therefore affirm.

We summarize the facts from the findings of the administrative law judge (ALJ), which were adopted by the board. Claimant worked for employer Department of Corrections as an Office Specialist 2. In September 1998, while still a probationary employee, claimant accepted a transfer to employer's Emergency Response Unit, where she worked under the supervision of Holder, a 28-year veteran of employer. The board found that, during claimant's work for the Emergency Response Unit, Holder created and maintained a hostile, abusive, intimidating, offensive, and demeaning work environment for claimant. He repeatedly sexually harassed claimant. Claimant attempted to cope with Holder's behavior but became increasingly depressed and anxious, with marked distress and significant impairment in social and occupational functioning. She developed physical symptoms caused by her psychological condition, including abdominal pain, diarrhea, and chest pain.

In December 1999, claimant sought medical services for her condition, and her doctor, Dr. Harper, authorized temporary disability compensation to restrict her exposure to Holder. Harper described claimant's condition as follows:

> "For several months [claimant] has been having frequent diarrhea, chest pain, abdominal pain, and generally feeling very poorly. She is under a lot of stress at work. She feels threatened by her boss. 'I am deathly afraid of him.' She has worked for him for one year and three months and has suffered physical and emotional abuse throughout her employment there. Abuse has gradually been escalating. He will shove her against the wall, kick her, and act as if he is about to punch her. He tells her that women are stupid and women are subservient to men. She has interviewed for

numerous jobs and has been ranked at the top, but he refuses to allow her to leave her current position. She has contacted her union about her work environment. They would like her to sue and try to have her boss fired. She does not want to do that because she believes that her boss would kill her if he were fired because of her. *Her physical symptoms are directly related to the stress she is under at work.* Having diarrhea several times a day. Feels nauseated and sometimes vomits before going to work. Has a constant anterior chest pressure that is there day and night and has been present for several months now."

(Emphasis added.) Claimant had no prior psychological condition.

Claimant was transferred by employer to a different position beginning on December 27, 1999, where she has worked successfully and productively. Her condition began improving when she was removed from the work stressors created under Holder's supervision.

Dr. Bennington-Davis, a psychiatrist who performed an insurer medical evaluation (IME) of claimant for SAIF, expressed the opinion that claimant was suffering from an "adjustment disorder with depressed mood" caused by the stress of Holder's harassment. In response to a question from SAIF's representative as to whether claimant was merely suffering from or complaining of symptoms or discomfort, but not actually suffering from a diagnosable condition, Bennington-Davis responded:

"[Claimant] has signs and symptoms consistent with adjustment disorder with depressed mood. She also has symptoms and discomfort from symptoms including recurrent and intrusive distressing thoughts; recurrent distressing nightmares; *intense psychological distress from exposure to her workplace and prior supervisor (Mr. Holder); efforts to avoid thoughts, feelings and conversations associated with her work the last several months; efforts to avoid activities, places and people that arouse recollections of her work in that place; associated hypervigilance; difficulty with sleep; and exaggerated startle.* However these symptoms do not combine in either numbers or severity to actually make a *second* psychiatric diagnosis."

(Emphasis added.)

Bennington-Davis was also asked whether claimant had a diagnosable psychiatric disorder and, if so, what was the basis for the diagnosis. She responded:

"Yes, [claimant] meets the criteria for adjustment disorder with depressed mood. By definition the disturbance and adjustment disorder begins within 3 months of the onset of a stressor *which [claimant] does* and lasts no longer than 6 months after the stressor, and *hers indeed is beginning to remit now just 2 months after the stressor.* If the stressor persists, the adjustment disorder also may persist as it has in the case of [claimant].

"*The symptoms and behaviors that have begun in response to the stressor of harassment at work*, include marked stress and significant impairment in social and occupational functioning. The modifier of 'depressed mood' is chosen because the predominant manifestations are symptoms of depressed mood, tearfulness, poor energy, feelings of hopelessness, irritability, and feeling helpless."

(Emphasis added.) Finally, when asked to identify and apportion all stressors that affected claimant's condition, Bennington-Davis replied, "Perceived harassment from her supervisor, 100%."

The ALJ found that the major contributing cause of claimant's mental disorder "is the severe and pervasive hostile, abusive, offensive, and intimidating work environment and conditions which Holder created and perpetrated for and towards claimant, his subordinate employee." As noted above, the board adopted the ALJ's findings and expressly found that claimant was a credible witness and that Holder was not credible. It determined that claimant suffered from a medically recognized and diagnosable mental disorder that arose out of and in the course of her employment. It also assessed a penalty against SAIF under ORS 656.262(1) for the issuance of an unreasonable denial.

On review to this court, SAIF first challenges the board's determination that the claim is compensable. SAIF asserts that, in order to establish the compensability of an occupational disease, claimant must prove that employment conditions, when compared with nonemployment conditions, were the major contributing cause of the disease. ORS

656.802(2)(a). That is the correct standard. SAIF argues that claimant did not meet that burden of proof in this case because Bennington-Davis, on whose opinion the board primarily relied, did not have a complete history of off-work stressors that claimant was experiencing during the same period that she worked for Holder. It is SAIF's position that the board erred in concluding that the lack of this information about the off-work stress did not make a difference, because it was not relevant to Bennington-Davis's diagnosis due to the particular nature of the diagnosis and the particular circumstances. SAIF argues that, because of her lack of consideration of claimant's off-work stressors, Bennington-Davis's opinion did not establish by clear and convincing evidence that claimant's mental disorder arose out of and in the course of her employment. ORS 656.802(3)(d).

As noted above, the board concluded that the expert medical opinion of Bennington-Davis—that claimant's condition was caused by her work—was based on a sufficiently complete medical history to support its determination that claimant's work was the major contributing cause of her condition. The board explained:

"On review, SAIF contends that neither Dr. Harper [claimant's primary physician] nor Dr. Bennington-Davis had a complete and accurate history regarding claimant's off-work stressors. Claimant argues that she was not being treated for depression related to off-work events; rather, she was treated for an adjustment disorder related to her work with her supervisor, Holder. Both parties cite *SAIF v. Brown*, 177 Or App 113, 33 P3d 336 (2001).

"In *Brown*, the court held that whether a doctor's information is complete or incomplete will vary depending on the particular diagnosis that the doctor is asked to make. The court concluded that, based on the medical evidence in *Brown*, the Board could find that the information the physicians lacked was not relevant to diagnosing post-traumatic stress disorder. *Id.* at 121. The court noted, however, that we had instead concluded that the off-work stressors were not important because they had essentially resolved by the time of the work-related assault that the claimant contended caused her mental disorder. The court concluded that our rationale was a complex medical issue

requiring expert medical opinion and that the medical evidence did not support such a conclusion. On this basis, the court reversed and remanded.

> "Here, based on the opinion of Dr. Bennington-Davis, a psychiatrist, *we find that the off-work stress was not relevant to the doctor's diagnosis of an adjustment disorder caused by claimant's employment conditions.* On this basis, we are not persuaded that the information Dr. Bennington-Davis or Dr. Harper lacked regarding the off-work stress would affect their opinions regarding the cause of claimant's mental disorder. In reaching our conclusion, we note that Dr. Bennington-Davis had SAIF's investigative report. (Ex. 12-5). In addition, Dr. Bennington-Davis stated to SAIF's counsel that specific details were less important in claimant's situation than the overall feel of the workplace and that variations in reports of particular details were unlikely to affect her opinions and conclusion. (Ex. 16). Under such circumstances, we disagree with the dissents' assertion that Dr. Bennington-Davis possessed an incorrect history of claimant's illness."

(Emphasis added.)

We review a board finding that an expert medical opinion is based on sufficiently complete information for substantial evidence. *Jackson County v. Wehren,* 186 Or App 555, 561, 63 P3d 1233 (2003). As we stated in *Wehren,* a "complete history" is not a prerequisite to a medical opinion being considered persuasive. A medical history need only include relevant information. As we explained, "A history is complete, in other words, if it includes sufficient information on which to base the opinion and does not exclude information that would make the opinion less credible." *Id.* at 561. We have further explained that, whether the information on which a medical expert bases his or her opinion is complete will vary depending on the circumstances, in particular on the specific diagnosis that the medical expert is asked to make. *Brown,* 177 Or App at 120.

SAIF argues that the board's finding that Bennington-Davis's opinion was based on a sufficiently complete history is flawed for a number of reasons. SAIF points to evidence that claimant was subject to a number of off-work stressors and asserts that Bennington-Davis's failure to expressly

acknowledge and weigh those stressors in her assessment of the cause of claimant's condition makes her opinion unpersuasive and insufficient to constitute substantial evidence to support the board's conclusion that claimant's work was the major contributing cause of her condition.

SAIF first asserts that the board erred in relying on *Brown* to conclude that the information regarding off-work stressors was not relevant and in its conclusion that this lack of information did not make Bennington-Davis's opinion unpersuasive. In *Brown*, the issue was the compensability of the claimant's post-traumatic stress disorder. The insurer asserted in that case that the diagnosing physicians were unaware of the claimant's off-work stressors and, therefore, they did not have a complete medical history. We held that "[w]hether a doctor's information is complete or incomplete will vary depending on the particular diagnosis that a doctor is asked to make." 177 Or App at 120. The medical evidence in *Brown* indicated that the diagnosis of post-traumatic stress disorder "is a very specific unique mental illness with certain criteria for making the diagnosis." *Id*. Given the criteria described by the medical opinion as being relevant to the diagnosis of post-traumatic stress disorder, we concluded that the board reasonably could find that, although the doctors lacked information concerning off-work stressors, the doctors had a sufficiently complete history for the purpose of deciding whether claimant suffered from post-traumatic stress disorder. SAIF asserts that here, in contrast to *Brown*, claimant does not suffer from a "unique" mental disorder; rather her diagnosed "adjustment disorder" is "generic," and, therefore, the board should not have relied on *Brown*.

We do not believe that the board's reliance on *Brown* was misplaced. As discussed above, there is medical evidence here concerning the specific nature and timing of an adjustment disorder, which was Bennington-Davis's diagnosis of claimant, that is pertinent to deciding what information is relevant to the cause of claimant's condition. Specifically, Bennington-Davis stated that "by definition the disturbance and adjustment disorder begins *within three months of the onset of a stressor* which [claimant] does and *lasts no longer than six months after the stressor*, and hers is beginning to remit now just two months after the stressor." (Emphasis

added.) Bennington-Davis concluded that claimant's symptoms had begun "in response to the stressor of harassment at work." In other words, after considering the timing and nature of claimant's symptoms, and the particular characteristics of her diagnosed condition, Bennington-Davis found a direct connection between claimant's work environment and her condition. Consequently, similarly to the circumstances in *Brown*, the specific nature of the condition diagnosed does affect the relevance of other evidence.

As we will discuss, the evidence of off-work stressors that SAIF relies on in arguing that Bennington-Davis's opinion is not persuasive is such that the board could have found, as it did, that this information was not relevant. The evidence of off-work stressors that SAIF identified included the death of two grandparents and a cousin, putting a beloved pet to sleep, selling a house and purchasing a new one, and having to pay two mortgages for a period of four to five months. Additionally, at various times, claimant apparently had concerns about the health problems of various family members.

In view of Bennington-Davis's diagnosis, including her specification of the necessary relationship between the stressors and the appearance of the symptoms, we believe that the board's conclusion that the above information was not relevant is correct. First, the timing of these off-work events does not coincide with Bennington-Davis's explanation of the timing of claimant's condition; specifically, the adjustment disorder begins within three months of the outset of a stressor and lasts no longer than six months after. Many of the events that SAIF relies on took place long before the onset of claimant's symptoms. With respect to other events that SAIF relies on, the evidence was so imprecise that it was not possible to tell when the alleged events occurred.

Further, and significantly, there is *no* medical evidence in the record that suggests that any of these alleged off-work stressors contributed in any way to claimant's condition. *See Wehren*, 186 Or App at 562. SAIF was aware of those off-work stressors before the hearing on this matter and had the opportunity to present more specific evidence. For example, SAIF could have, but did not, inquire of its own

IME doctor, Bennington-Davis, about the effect of those other alleged stressors.

SAIF also complains that, in making its decision, the board erred in relying on a finding that Bennington-Davis had a copy of SAIF's investigative report. SAIF explains that, in referencing the report, the board incorrectly assumed that the report included full information about all of claimant's off-work stressors. SAIF argues that the board's reliance on that report to demonstrate that Bennington-Davis had all of the information about claimant's off-work stressors was erroneous, because the investigative report is not part of the record of this proceeding.

Although SAIF is correct that the board did note that Bennington-Davis had a copy of SAIF's investigative report, it is unclear what significance the board gave the report. In any event, the board did not indicate that it was drawing the inference that, because Bennington-Davis had the report, she had information about all of the alleged off-work stressors identified by SAIF. Further, the board, in fact, did not base its holding on the conclusion that Bennington-Davis knew about all of the off-work stressors. Had the board chosen to make such a finding, there was other evidence in the record that could have supported it. Claimant testified that she told Bennington-Davis about all of the off-work stressors that were brought up at the hearing. SAIF could have cross-examined claimant regarding that testimony but did not do so. When she was asked directly to identify and apportion all stressors that affected claimant's condition, she identified "perceived harassment from supervisor" as the only cause.

For all of the above reasons, we conclude that the board's finding that the failure to discuss off-work stressors did not undermine the persuasiveness of Bennington-Davis's diagnosis is supported by substantial evidence. We also hold that the board did not err, under the facts in this case, in concluding that that other information was not relevant. Consequently, the board's finding that Bennington-Davis's report supports its holding that claimant's condition arose out of her employment is supported by substantial evidence.

■ In its second assignment of error, SAIF asserts that the board failed adequately to explain the basis for the attorney fee award to claimant, because it did not make a finding as to the number of hours claimant's attorney devoted to the issue of compensability at the hearing. We do not agree that, under these circumstances, the failure of the board to make such a finding renders the board's order inadequate for judicial review. The relevant administrative rule, OAR 438-015-0010(4),[1] sets forth the factors that the board must consider in determining the award of attorney fees. The "time devoted to the case" is one of those factors. In evaluating claimant's request for attorney fees, the board recited the factors to be considered under the administrative rule. It then explained:

"The hearing in this matter lasted 3 days and 2 hours. Nineteen witnesses testified, eight of whom were called by claimant. The record contains 21 exhibits, none of which were submitted by claimant's attorney.

"The legal issue regarding compensability of an occupational disease claim for a mental disorder was of average complexity. The attorneys were skilled and presented their positions in a thorough manner. No frivolous issues or defenses were raised. Given SAIF's vigorous defense, there was substantial risk that claimant's attorney might go uncompensated.

"Although the hearing was lengthy and multiple witnesses testified, the issue was of average complexity and there were few exhibits with none being submitted by claimant's attorney. In addition, the value of the claim is

---

[1] OAR 438-015-0010(4) provides:

"In any case where an Administrative Law Judge or the Board is required to determine a reasonable attorney fee, the following factors shall be considered:

"(a) The time devoted to the case;

"(b) The complexity of the issue(s) involved;

"(c) The value of the interest involved;

"(d) The skill of the attorneys;

"(e) The nature of the proceedings;

"(f) The benefit secured for the represented party;

"(g) The risk in a particular case that an attorney's efforts may go uncompensated; and

"(h) The assertion of frivolous issues or defenses."

not great and involved only a week of temporary disability and some medical treatment. Based on an applications of the factors set forth above and considering the parties' arguments, we find that an assessed fee of $15,000 is reasonable for claimant's counsel's services regarding compensability at the hearing level."

SAIF argues here, as it did in *SAIF v. Wart*, 192 Or App 505, 87 P3d 1138 (2004), that, because the board cited the time devoted to a case as a factor, the board was required to make a finding regarding how many hours claimant's attorney expended on the case. As we explained in *Wart*, the fact that the time devoted to a case is a factor considered by the board does not necessarily mean that the board must make a finding about the time that an attorney devoted to a case. In this case, where there was no specific documentation submitted by claimant or SAIF on attorney fee hours, and the board offered an explanation for the amount of its award, the board's explanation was adequate for judicial review and the attorney fee award is affirmed.

Affirmed.