DEHOOG, P.J.
*538 Claimant, a 9-1-1 dispatcher, seeks judicial review of an order of the Workers' Compensation Board that upheld the denial of her occupational disease claim for post-traumatic stress disorder (PTSD). The board found that claimant had failed to prove that her cognizable employment conditions were the major contributing cause of her PTSD. Claimant argues that the board had no grounds on which to reject the opinion of claimant's psychiatrist and that, as a result, the board's order is not supported by substantial evidence or substantial reason. We conclude that the board's order lacks substantial reason to support its finding that the psychiatrist's opinion was unreliable and, accordingly, reverse and remand.
*1109 The applicable law is not in dispute. A claimant bears the burden of proving that an injury or occupational disease is compensable. ORS 656.266(1). Specific to occupational disease claims, the claimant "must prove that employment conditions were the major contributing cause of the disease." ORS 656.802(2)(a). Mental disorder claims are subject to additional requirements:
"(3) Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:
"(a) The employment conditions producing the mental disorder exist in a real and objective sense.
"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.
"(c) There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.
"(d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."
ORS 656.802(3).
*539 We take the following historical and procedural facts from the board's order and underlying record. Coos County (employer) employed claimant for 28 years as a 9-1-1 dispatcher. In 1996, claimant filed a workers' compensation claim for anxiety and depression that she attributed to an incident in which she had dispatched officers and a suspect had been shot. Claimant and employer's insurer resolved that claim through a disputed claim settlement (DCS). Then, in 2009, claimant sought treatment for depression and told her doctor that she was "under a lot of stress at work." Finally, in December 2012, claimant began seeing a psychiatrist, Dr. Reagan, who subsequently diagnosed claimant with PTSD and other emotional disorders. According to Reagan's intake notes, claimant reported that she was experiencing a number of mental and physical symptoms, many of which had begun after the 1996 shooting. Claimant also reported feeling "singled out" by her supervisor, and Reagan's subsequent chart notes indicated that claimant continued to complain of "work stress," along with various specific symptoms. Reagan's chart notes from January 2013 specifically noted that claimant had reported two sources of nonwork stress: caring for her terminally ill husband and financial difficulties.
In January 2014, claimant received a letter of reprimand from her supervisor for an incident in which she had failed to dispatch the fire department according to policy. Claimant saw Reagan the next month, after which Reagan wrote: "Work stress worsening. Written up. Possibly fired. *** PTSD nightmares worse. Reoccurring thoughts worse." (Uppercase omitted.) Following that February 2014 appointment, Reagan sent a letter to employer excusing claimant from work due to "work stress." In response to Reagan's letter, claimant's supervisor submitted an 801 claim form on claimant's behalf and listed "work related stress" as claimant's illness or injury.[1] Although Reagan's letter did not specifically identify claimant's condition as PTSD, the parties and the board have subsequently treated her compensation claim as one for that particular disorder.
*540 A second psychiatrist, Dr. Telew, evaluated claimant at the request of SAIF, employer's insurer. Telew diagnosed major depressive disorder but disagreed that claimant had PTSD, writing:
"The worker clearly has a stressful job being a 911 dispatcher, but I saw absolutely no evidence that she developed definitive posttraumatic stress disorder. She complains of anxiety and nightmares that have been present for many years, but I question the accuracy of her report. Simply having anxiety and nightmares does not qualify for a diagnosis of PTSD. In the interview today, she denied the full spectrum *1110 of symptomatology that would be consistent with a PTSD diagnosis."
Other than that general reference to "symptomology * * * consistent with a PTSD diagnosis," Telew did not discuss the symptoms or diagnostic criteria for PTSD or explain why, in his view, claimant's condition failed to satisfy specific criteria. Instead, Telew explained that he found claimant to be "an extremely poor historian." According to his report, when he "asked [claimant] about the traumatic events that caused her psychiatric difficulties," she "described several events, but they were all vague descriptions with little detail and she could not remember much of the incidents." In addition, Telew wrote that claimant "could not remember various parts of her history, * * * either minimized or denied past psychiatric problems[,] * * * [and] repeatedly denied having any outside stressors in her life" until Telew asked about specific information already in claimant's records, such as her husband's illness.
SAIF denied the claim after reviewing Telew's report, and claimant requested a hearing before the board.
Claimant submitted Reagan's opinion through a concurrence letter that her attorney had written and Reagan had signed, indicating that it "accurately summarize[d their] discussion and [Reagan's] medical opinions about [claimant] and her mental disorder." According to the letter, Reagan had been provided with "a complete copy of the Workers' Compensation Board hearing exhibits," including Telew's report.[2] Reagan believed that he had "a materially *541 complete and accurate history" based on what claimant had told him "and from the medical records and hearing exhibits" that he had read. He believed that claimant was a reliable historian in that she was not "an embellisher" or someone "sophisticated, clever or devious enough to fake her symptoms." Reagan acknowledged that, "when [claimant] is irritable, her perceptions become skewed to protect herself," but he attributed that characteristic in part to claimant's PTSD.
The concurrence letter explained Reagan's opinion as to how claimant met each of the diagnostic criteria for PTSD in the Diagnostic and Statistical Manual, fifth edition (DSM-V). Only the first criterion, "Stressor," addresses the type of event that can cause PTSD:
"Criterion A: Stressor. The person was exposed to death, threatened death, actual or threatened serious injury or actual or threatened sexual violence as follows (one required): 1) Direct exposure. 2) Witnessing in person. 3) Indirectly, by learning that a close relative or close friend was exposed to trauma. If the event involved actual or threatened death, it must have been violent or accidental. 4) Repeated or extreme indirect exposure to aversive details of the event(s), usually in the course of professional duties (e.g., first responders, collecting body parts; professionals repeatedly exposed to details of child abuse). This does not include indirect non-professional exposure through electronic media, television, movies, or pictures."
The remaining criteria involve symptoms or behaviors and relate back to "the event" or "the traumatic event." As to the first criterion, Reagan believed that it had been met because claimant's position as a 9-1-1 operator had "included extreme exposure to traumatic events, sometimes involving close friends or relatives in a small community."
The opinion letter next explained Reagan's belief that the legal requirements for a mental disorder claim under ORS 656.802(3) had been met. According to Reagan, the employment conditions producing claimant's mental disorder existed in a real and objective sense. See ORS 656.802 (3)(a). That is, her PTSD "was produced by real events that happened to real people" in the course of claimant's job as a 9-1-1 dispatcher, which Reagan likened to "listening to a *542 war zone." Reagan believed that those employment conditions "were sufficiently severe to cause [claimant's] PTSD," because they "were 'life or death' events[ ] that were not generally inherent in every working situation," and claimant's *1111 work "made her a witness to the traumatic events," which she "had to visualize and process in order to provide assistance." Reagan "indicated that [claimant's] PTSD was not caused by any of the listed exclusions" in ORS 656.802 (3)(b), "assured [claimant's attorney] that PTSD is generally recognized by the medical community,"see ORS 656.802 (3)(c), and "stated that *** it is highly medically probable that [claimant's] PTSD arose out of and in the course of her employment with Coos County," see ORS 656.802(3)(d).
As to causation, ORS 656.802(2)(a), the letter stated Reagan's opinion that claimant's nonexcludable employment conditions were the major contributing cause of her PTSD:
"After weighing the potential non-work causes, including, among other causes, her husband's illness and disability [and] her family relationships, and after weighing certain work conditions (mentioned above as excludable) that by law must be considered as non-work contributors, such as the written reprimand, and after weighing the work stressors you reached your medical causation opinion. In your opinion, it is highly probable, if not certain, that [claimant's] employment conditions as a 911 dispatcher for Coos County are the major contributing cause of her mental disorder, PTSD. In short, her traumatic work stressors outweighed the sum of non-work and excludable causes."
According to Reagan, claimant's "family stressors" could not cause her symptoms, though they could "worsen the symptoms of PTSD that are already present" and, he believed, claimant's PTSD had "negatively affected her relationships within the family." The letter separately noted that claimant's 1996 claim for depression and anxiety following a shooting incident "was settled as not work-related ." (Emphasis in original.)
An administrative law judge (ALJ) upheld SAIF's denial after finding that claimant had failed to meet her burden of proof at the hearing. In the ALJ's view, Reagan's opinion and chart notes were "extremely vague and conclusory."
*543 The ALJ specifically observed that Reagan had failed to discuss claimant's stressors and symptoms in detail, failed to explain "what family stressors claimant had or why the work stressors were the greater contributor," and failed to explain why he believed that the disciplinary letter "did not contribute to claimant's distress or her mental condition." The ALJ ultimately found Reagan's opinion to be unpersuasive and that claimant therefore had failed to prove causation under ORS 656.802(2)(a) and (3)(d) :
"Because Dr. Reagan's opinion is lacking in explanation and analysis, I do not find that it persuasively establishes that claimant's mental disorder was caused in major part by her work exposure. *** In summary, in the absence of a persuasive medical opinion, I do not find clear and convincing evidence that claimant's mental disorder arose out of and in the course of claimant's employment."
Claimant appealed to the board, which, in turn, upheld the ALJ's order over a dissent. The board expressly "adopt[ed] and affirm[ed] the ALJ's order with *** supplementation." In addition to the ALJ's rationale, the board also found Reagan's opinion unpersuasive because it perceived "several grounds that cast doubt on the underlying assumptions of Dr. Reagan's opinion." The board contrasted Reagan's statement that claimant was an "accurate historian" with Telew's observation "that claimant's recollection was vague and evasive when answering questions regarding details of events at work and her prior history of psychiatric medical treatment." And, the board found, the record was "more consistent with Dr. Telew's assessment":
"For example, at hearing, claimant was questioned about off-work stressors, which she either downplayed or denied. Her treatment records, however, contain references to off-work stressors such as financial and care giving difficulties. Furthermore, in attributing claimant's PTSD condition to her work, Dr. Reagan believed that she took traumatic emergency calls from close friends and relatives. However, claimant gave only a few examples of traumatic incidents involving people she knew personally, none of whom she described as close friends or relatives."
(Citations and footnote omitted.) "In light of such circumstances," the board wrote, it did *1112 "not consider Dr. Reagan's *544 opinion to be based on an accurate history." Consequently, the board found Reagan's opinion unpersuasive and, "in the absence of any other persuasive medical opinion," found that claimant had "not established the compensability of her mental disorder claim."
The board separately addressed claimant's argument that, because Reagan had diagnosed her with PTSD in 2012, well before the 2014 reprimand, her PTSD must have been caused by "nonexcludable" work exposure under ORS 656.802(3)(b). The board disagreed, because Reagan's diagnosis appeared to have relied on aspects of claimant's work that, by law, could not contribute to a finding of compensability. First, Reagan had noted "claimant's issues with her supervisors and her perception of being 'singled out,' " a matter that the board classified as stress "generally inherent in every workplace." See ORS 656.802(3)(b). Second, the board explained, the 1996 shooting, which Reagan had mentioned in his intake notes, could not be considered in establishing the compensability of the current claim, because a claim related to that incident had previously been the subject of a settlement between claimant and employer's insurer. See generally Gilkey v. SAIF , 113 Or. App. 314, 317, 832 P.2d 1252, rev. den. , 314 Or. 573, 840 P.2d 1295 (1992) (where worker had settled earlier hip-injury claim, there could be "no compensable relationship" between that injury and a subsequent claim for a degenerative hip condition). Therefore, "even without considering the January 2014 reprimand," the board "conclude[d] that claimant [had not] established that her PTSD condition was caused by nonexcluded work-related factors."
On judicial review, claimant argues that the board erroneously discounted Reagan's opinion for failing to fully address claimant's "non-traumatic" stressors, because, claimant reasons, those stressors were irrelevant to Reagan's specific diagnosis of PTSD. Claimant contends that, as a result, substantial evidence and substantial reason do not support the board's finding that Reagan's opinion was unpersuasive. SAIF responds that the board adequately explained its grounds for finding Reagan unpersuasive. SAIF also dismisses claimant's contention that her nonwork stressors were irrelevant, because Reagan "did not offer [that] rationale for dismissing consideration of claimant's *545 personal stressors." For the reasons that follow, we agree with claimant that the board's order, which includes the underlying ALJ order adopted by the board, fails to demonstrate substantial reason.[3]
We review orders of the Workers' Compensation Board "as provided in ORS 183.482(7) and (8)." ORS 656.298(7). As pertinent here, we review for substantial evidence, which "exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In reviewing for substantial evidence, we must also determine whether the board's analysis comports with substantial reason. To satisfy that requirement, the board must "provide[ ] a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." Arms v. SAIF , 268 Or. App. 761, 767, 343 P.3d 659 (2015) (citing Drew v. PSRB , 322 Or. 491, 500, 909 P.2d 1211 (1996) ). In addition, there must be "no indication that, in making its decision, the board relied on evidence that did not qualify as substantial evidence." Jenkins v. Board of Parole , 356 Or. 186, 208, 335 P.3d 828 (2014) ; see Garcia v. Boise Cascade Corp. , 309 Or. 292, 296, 787 P.2d 884 (1990) ("In cases where evidence is rejected or disregarded by the [ALJ], and such action purports to be based on facts, it is appropriate for the reviewing court to examine whether the [ALJ's] decision to disregard or discount evidence in the record is supported by substantial evidence.").
Here, in reviewing the board's order, we detect three lines of reasoning behind the board's ultimate determination that claimant had not established the compensability of her claim. First, the board adopted the ALJ's reasoning, which was that Reagan's opinion was unpersuasive because it was "lacking in explanation and analysis." Second, the board *1113 itself found Reagan's opinion unpersuasive because it was based on an inaccurate history. Third, the board found that Reagan had failed to properly account for excludable work conditions in his causation analysis. *546 Beginning with the ALJ's order, the ALJ found Reagan unpersuasive in part because he did not discuss claimant's family stressors in detail "or explain what family stressors claimant had or why the work stressors were the greater contributor." The ALJ was also critical of Reagan's failure to "explain the basis of his opinion that [the letter of reprimand] did not contribute to claimant's distress or her mental condition." Those are not reasonable justifications for discounting Reagan's opinion, which, read as a whole, does not support the ALJ's concerns.
First, Reagan's opinion acknowledges claimant's "family stressors" in its causation analysis. But after noting such "potential non-work causes, including, among other causes, her husband's illness and disability [and] her family relationships," Reagan concludes that "her traumatic work stressors outweighed the sum of non-work and excludable causes." (Emphasis added.) While that analysis may be brief, it follows from Reagan's earlier discussion reflecting his belief that PTSD is caused only by traumatic stressors. For example, Reagan sets out the DSM-V's diagnostic criteria for PTSD, only the first of which-"Stressor"-relates to causation; under that criterion, the person must have been exposed to "death, threatened death, actual or threatened serious injury or actual or threatened sexual violence." And, in Reagan's opinion, this criterion had been met, because claimant's "profession as a 911 dispatcher for the County has included extreme exposure to traumatic events, sometimes involving close friends or relatives in a small community."
The only reasonable reading of Reagan's causation analysis is in reference to that criterion. Reagan compared claimant's work to "listening to a war zone." That statement, though arguably hyperbolic, demonstrates the type of traumatic exposure that Reagan had in mind and that the record shows claimant experienced.[4] Reagan explained why *547 he believed claimant's employment conditions were sufficiently severe to cause her PTSD: "[T]hey were 'life or death' events, that were not generally inherent in every working situation. *** [Claimant's] involvement as a 911 dispatcher made her a witness to the traumatic events. She was given descriptions of real events as they happened in real time that she had to visualize and process in order to provide assistance." Later, the opinion letter explains that claimant's job "requires her to experience traumatic events and her employment conditions involving those events constitute the major if not sole cause of her PTSD."
Viewed as a whole, Reagan's opinion sufficiently explains his assessment that claimant's "family stressors" could not have caused her PTSD. Reagan identified the type of stressors that could cause PTSD and provided a clear reason for not discussing claimant's family stressors in detail: They were not "traumatic events" of the type that claimant experienced in her work or that were capable of causing her disorder. As a result, it was not reasonable for the ALJ to view Reagan's opinion as insufficiently addressing claimant's family stressors.
It was likewise unreasonable for the ALJ to consider Reagan's opinion unpersuasive because he did not sufficiently explain why, in his view, the disciplinary letter that claimant received in 2014 "did not contribute to claimant's distress or her mental condition." Given Reagan's chronology of events, no explanation was required. He diagnosed PTSD two years before claimant received the disciplinary letter; although Reagan believed that claimant's PTSD worsened as she "continued to experience traumatic events while working as a 911 dispatcher," the letter could not *1114 have played any role in bringing about the PTSD for which claimant sought compensation. Moreover, as we have explained, Reagan's opinion separately indicated that the letter was not the type of violent trauma that could cause PTSD.
Because the ALJ did not provide a rational explanation for why it found Reagan's opinion unpersuasive, that finding, as well as the ALJ's ultimate conclusion-that claimant did not meet her burden of proof because Reagan's opinion could not be relied upon-is not supported by *548 substantial evidence and reason and is not a basis on which we can affirm the board's order. See Garcia , 309 Or. at 296, 787 P.2d 884 (ALJ's decision to discount or disregard evidence must be supported by substantial evidence); see also Armenta v. PCC Structural, Inc. , 253 Or. App. 682, 692, 292 P.3d 573 (2012) (reversing and remanding for reconsideration where the board "unreasonably misinterpreted" a medical opinion and failed to consider it).
Nor can we affirm on the basis of the board's supplemental reasoning, in which it found that Reagan's opinion was based on an inaccurate patient history. "We review a board finding that an expert medical opinion is based on sufficiently complete information for substantial evidence." SAIF v. May , 193 Or. App. 515, 521, 91 P.3d 802 (2004) (citing Jackson County v. Wehren , 186 Or. App. 555, 561, 63 P.3d 1233 (2003) ). "[W]hether the information on which a medical expert bases his or her opinion is complete will vary depending on the circumstances, in particular on the specific diagnosis that the medical expert is asked to make." Id. (citing SAIF v. Brown , 177 Or. App. 113, 120, 33 P.3d 336 (2001) ). A history is complete " 'if it includes sufficient information on which to base the opinion and does not exclude information that would make the opinion less credible.' " Id. (quoting Wehren , 186 Or. App. at 561, 63 P.3d 1233 ). That is, a history is incomplete only if the missing information is material to the question at issue. See Moreno v. Menlo Logistics, Inc. , 171 Or. App. 675, 680, 16 P.3d 1177 (2000) (reversing and remanding because the board did not adequately explain its rejection of a medical report "based on an inconsistency with claimant's testimony that does not appear to be material to the question of medical causation").
Here, substantial evidence and reason do not support the board's finding that Reagan's opinion was unpersuasive because it was based on an inaccurate history. The board relied in part on its observation that claimant had "downplayed or denied" her off-work stressors at the hearing; Reagan's treatment records, however, reflect his awareness of claimant's "off-work stressors such as financial and caregiving difficulties." Thus, while claimant and SAIF may dispute the significance of those off-work stressors in light of the medical evidence, we conclude that the board's *549 reasoning is flawed on a more basic level. Contrary to the board's apparent understanding, Reagan was patently aware of those aspects of claimant's history. Reagan's treatment notes reference claimant's off-work stressors, and his opinion specifically notes her husband's disability. And, to the extent that claimant's testimony at the hearing may have downplayed that history, her testimony says little, if anything, about whether Reagan had an accurate history for his medical opinion, which he provided before the hearing.[5]
The board next observed that, contrary to Reagan's belief that claimant "took traumatic emergency calls from close friends and relatives," claimant "gave only a few examples of traumatic incidents involving people she knew personally, none of whom she described as close friends or relatives." But the board fails to explain how, if at all, that perceived inconsistency materially detracts from Reagan's opinion that claimant's traumatic experiences as a 9-1-1 dispatcher caused her PTSD, given that the record partly corroborates-and never directly contradicts-Reagan's *1115 understanding of claimant's work experiences.[6] See Moreno , 171 Or. App. at 680, 16 P.3d 1177 (requiring board to explain why an inconsistency in the evidence was material to the contested issue of causation).
We are mindful that we do not substitute our view of the facts for that of the board. Assuming, however, that a reasonable person, viewing the record as a whole, could *550 find that Reagan's understanding of claimant's history was not entirely accurate, the board's resulting finding-that it could not rely on Reagan's opinion-is not supported by substantial reason. The record reflects that Reagan possessed all of the information that he believed necessary to diagnose and identify the cause of claimant's PTSD. See May , 193 Or. App. at 521, 91 P.3d 802. It may be that Reagan incorrectly believed that claimant had taken more traumatic calls from friends and family than she had in fact taken. But neither Reagan's report, nor anything else in the record, identified any stressor capable of causing claimant's PTSD other than her work as a 9-1-1 dispatcher. And, because claimant's work conditions as a 9-1-1 dispatcher were the only medically possible cause of her PTSD, it was incumbent upon the board to explain how an imperfect understanding of those conditions was material to Reagan's opinion regarding causation. The board did not provide that explanation. Accordingly, its reliance on Reagan's inaccurate history to reject his opinion is not supported by substantial reason.
Finally, we address the board's third justification for rejecting Reagan's analysis, which was that Reagan did not limit his opinion to "nonexcluded work-related factors." The board observed that Reagan's chart notes referred to claimant's "excludable" work-related stress, such as friction with her supervisor, as well as to the circumstances underlying the 1996 claim, which was settled and deemed to be nonwork-related. The board's observations, however, fail to account for Reagan's opinion letter, which represents the culmination of two years of treatment. Moreover, Reagan's opinion letter clarifies that he relied only on nonexcluded work-related factors in determining the cause of claimant's PTSD. The letter explains that Reagan and claimant's attorney "discussed the employment conditions that are excluded from consideration under ORS 656.802(3) *** (conditions generally inherent in every working situation, reasonable disciplinary or corrective or job performance evaluation actions, cessation of employment, or employment decisions attendant upon ordinary business or financial cycles)," and that Reagan "indicated that [claimant's] PTSD was not caused by any of the listed exclusions." Similarly, as to the 1996 incident, the opinion letter recognizes that *551 the subsequent workers' compensation claim "for depression and anxiety related to the incident and [claimant's] work as a 911 dispatcher was settled as not work-related in 1996." (Emphasis in original.)
In concluding our discussion, we note that this is not a case in which the board has simply found the opinion of one doctor more persuasive than that of another, and therefore relied on the opinion it found more persuasive. See Armstrong v. Asten-Hill Co. , 90 Or. App. 200, 206, 752 P.2d 312 (1988) ( "[I]f there are doctors on both sides of a medical issue, whichever way the Board finds the facts will probably have substantial evidentiary support."). Specifically, we do not read the board's order as accepting Telew's diagnosis of a major depressive disorder in lieu of Reagan's diagnosis of PTSD; rather, the board-like the ALJ-appears to have accepted at least for argument's sake that claimant suffered from PTSD, but ultimately concluded that she had not established the compensability of that mental disorder. In rejecting Reagan's opinion that claimant's nonexcludable work conditions were the major contributing cause of her mental disorder, the board cannot have relied on Telew's opinion *1116 regarding the cause of claimant's PTSD, because, as explained, Telew does not appear to have considered that question.[7]
For the foregoing reasons, substantial reason does not support the board's decision to discount Reagan's opinion. And, as a result, the board should have accounted for the opinion letter here, rather than relying solely on Reagan's chart notes. Cf. The Boeing Company v. Cole , 194 Or. App. 120, 124, 93 P.3d 824 (2004) ("[W]hen there are inconsistencies in an expert's testimony, the board must provide an explanation as to the basis for its reliance on that testimony."). Because the board failed to do so, its conclusion "that claimant has [not] established that her PTSD
*552 condition was caused by nonexcluded work-related factors" is not supported by substantial reason.
Reversed and remanded.

An 801 claim form describes a worker's injury or illness and initiates a worker's compensation claim.

The parties submitted and served copies of their exhibits before claimant's hearing took place.

We therefore do not address claimant's additional argument that the board failed to apply correctly the causation balancing test that we described in Liberty Northwest Ins. Corp. v. Shotthafer , 169 Or. App. 556, 565, 10 P.3d 299 (2000).

Claimant testified that she had handled 9-1-1 calls involving dead and dying infants, a man who had shot his wife in the head but reported to claimant that his wife had just killed herself "sitting right next to him," as well as other homicides. Claimant also recalled having handled police dispatch while officers were threatened with firearms and once, during "an all-out mess," as different groups of officers responded to separate reports involving armed suspects. Although Reagan's opinion letter did not discuss the specifics of any traumatic incidents, Telew's report included many such events and Reagan reviewed that report.

Although claimant "downplayed" those stressors at the hearing, her testimony was not inconsistent with the record. In Reagan's notes from 2013, he wrote that claimant was experiencing stress related to finances and caring for her disabled husband. At the hearing nearly two years later, SAIF's attorney asked claimant if she was experiencing financial issues. Claimant answered, "Not right now." The attorney asked if claimant had to take care of her husband on account of his disability. Claimant answered, "Not at this point." The record contains no further references to those specific stressors.

Claimant testified about two 9-1-1 calls involving people that she knew-a call from a friend who had found his father "deceased in his bathtub" and from a former coworker whose daughter had just given birth, 19 weeks early, to an infant who could not survive. Telew reported that claimant remembered taking a call from a childhood acquaintance who had rolled over onto her infant child, who subsequently died. The record also includes claimant's statement to a SAIF investigator that, in the community, she "knows most of the people and [is] related to many." In addition, claimant referred to the police officers for whom she handled radio dispatch as "my guys," and stated, "You work with them for so long and they become like family."

SAIF suggests that, because the board found Reagan's opinion unpersuasive, it must also have agreed with Telew's opinion that claimant did not suffer from PTSD. While the board may have held that view without stating it, we cannot reconcile that reading of the board's order with the board's narrow focus on whether "claimant ha[d] established that her PTSD condition was caused by nonexcluded work-related factors." (Emphases added.) Accordingly, we do not consider that to be an available ground on which we might affirm.