Argued and submitted February 6, 1998, affirmed May 19, 1999

In the Matter of the Compensation of
Clyde E. Willcutt, Claimant.

SAIF CORPORATION
and The Boeing Co.,
*Petitioners,*

*v.*

Clyde E. WILLCUTT,
*Respondent.*

(WCB 96-05370; CA A97345)

981 P2d 1288

David L. Runner argued the cause and filed the brief for petitioners.

Richard C. Pearce argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judges.

ARMSTRONG, J.

* Deits, C. J., *vice*, Warren, P. J., retired.

## ARMSTRONG, J.

SAIF petitions for judicial review of a Workers' Compensation Board decision that found that the condition for which claimant had sought treatment was a compensable consequence of a 1974 work-related back injury. We review for errors of law and substantial evidence and affirm. ORS 183.482(8)(a), (c).

Claimant first injured his back in 1974 when, while working as a machinist for the Boeing Company in Portland, he fell against a workbench. As a result of that injury, claimant was awarded permanent total disability in May 1977. Since the injury, claimant has complained of chronic back pain. Attempts to alleviate the pain have included multiple back surgeries, physical therapy, and the prescription of narcotic analgesics.

At some time in the late 1980s, claimant began receiving intramuscular injections of Demerol and Phenergen to help relieve his pain symptoms. In October 1994, claimant suffered nerve damage as a result of one of the injections. The nerve damage caused numbness and weakness in his right leg, which continued to plague him long after the injection. A consequence of that damage was that claimant often would not know if he had properly placed his right foot when taking a step. In February 1996, claimant was walking on his driveway when he fell and hit his head and shoulder. He attributed the fall to the right leg numbness and weakness. Immediately after the fall, claimant developed severe neck pain on his right side and right upper extremity pain.

Claimant's family physician, Dr. James, examined claimant on February 13, 1996. An x-ray taken at that time revealed what James described as "an unusual appearance of the cervical spine with straightening except between C5-6 where he has a definite angulated area and narrowed disc space. Suspect he may have had a ruptured disc." James arranged for claimant to undergo a cervical MRI, which was performed on February 16, 1996. The MRI revealed "disc space narrowing at C4-5, C5-6 and C6-7, with associated degenerative spondylosis and osseous foraminal stenosis on the right at C4-5 and to a lesser degree at C5-6." In other

words, the MRI disclosed that claimant suffered from a degenerative condition that, among other things, had caused bone spurs to form and narrow the central passage in the spine through which the spinal cord passed. The MRI did not reveal any evidence of a herniated disc. James referred claimant to Dr. Grewe, who had treated claimant in the past for lower back pain.

Grewe examined claimant on February 26, 1996. His records of the examination include the following impressions:

"1. Acute cervical nerve root compression C4-5 and C5-6, right, secondary to a fall, which was secondary to his right leg giving way during the first part of February, 1996.

"2. Pre-existing spondylosis changes C4-5, C5-6 and C6-7."

Grewe then stated that he would request authorization for an anterior discectomy and interbody fusion, along with nerve root decompression, if claimant's symptoms did not abate. On March 25, 1996, Grewe operated on claimant, removing an acute herniated disc at C5-6 and C4-5 on the right. Grewe also removed osteophytes at the C5-6 and C4-5 levels.

On May 20, 1996, SAIF denied claimant's request for treatment and disability related to the surgery, stating that claimant's 1974 compensable injury was

"not the major contributing cause of your cervical nerve root compression, acute C4-5, C5-6 and osteophyte formation associated with spondylosis changes principally at C5-6 and to a lesser extent C4-5."

Claimant requested a hearing before an administrative law judge (ALJ), who issued an opinion and order in the case in October 1996. In that order, the ALJ made the following findings:

"(1) Claimant's cervical condition resulted from a fall in February 1996. Dr. Grewe described the mechanism of injury as a wrenching of the cervical spine. * * * Immediately after the fall claimant experienced new and severe symptoms on the right side of the neck with radiating pain down the right arm. * * * Dr. Grewe diagnosed acute nerve compression at C4-5 and C5-6. * * * At surgery, he noted acute disc herniations at C4-5 and C5-6.

"(2) The fall was a direct consequence of right leg numbness and right ankle weakness. Claimant credibly testified his right ankle gave way causing him to fall. There is no evidence [that] the fall was due to any other causal factor."

The ALJ went on to find that claimant's right leg numbness and weakness was a direct result of the treatment of the earlier compensable low back injury:

"(3) The right leg numbness and weakness was a direct result of treatment of the low back injury claim. This treatment took the form of an October 15, 1994 injection of medication for chronic pain associated with the low back. Nothing in the file shows the treatment was not necessary and reasonable. Moreover, the file is persuasive [that] the accepted low back injury was the material contributing cause of the need for treatment. The record persuasively shows [that] the right leg weakness resulted from sciatic nerve damage which resulted from giving the injection."

Based on those findings, the ALJ ordered SAIF to accept the claim.

SAIF requested review by the Board, which adopted and affirmed the ALJ's order. The Board found Grewe's opinion about the cause of claimant's injury to be persuasive. It explicitly rejected the opinion of SAIF's medical expert, Dr. Rosenbaum, who had examined claimant at SAIF's request. After examining claimant and reviewing claimant's medical records, Rosenbaum had concluded that the 1974 compensable injury was not the major contributing cause of the condition for which claimant had sought treatment. In response to a question from SAIF about whether the preexisting degenerative spondylosis could be distinguished from a cervical condition attributable to claimant's fall, Rosenbaum had replied:

"The patient does not have evidence of acute pathology. He has evidence of degenerative osteoarthritis. A soft disk component was not present. If a soft disk component was present, one would potentially presume that it was a more recent abnormality. In essence, his pre-existing cervical condition cannot be directly distinguished from his cervical condition potentially created by the fall of February of 1996."

Finally, the Board did not consider it problematic that Grewe had not identified the fall as the major contributing cause of claimant's cervical pain symptoms:

> "Despite the absence of 'magic words' * * * Dr. Grewe's opinion satisfies claimant's burden of proof in this case. Prior to and during surgery, Dr. Grewe noted the presence of preexisting degenerative changes at C4-5 and 5-6. *Nevertheless, Dr. Grewe attributed claimant's condition to 'acute' herniations at C4-5 and 5-6.* Viewing Dr. Grewe's opinion as a whole, we conclude that the October 1994 treatment for the compensable low back condition (that injured claimant's sciatic nerve causing [right] leg numbness/weakness) was the major contributing cause of claimant's cervical condition."

(Emphasis added.)

SAIF makes two assignments of error. First, SAIF contends that the Board misinterpreted and, therefore, misapplied ORS 656.005(7)(a)(A) when it determined that the fall was the major contributing cause of claimant's cervical pain symptoms. Second, SAIF argues that the numbness and weakness in claimant's leg that resulted from the treatment of claimant's low back injury and that led to claimant's fall was not a compensable consequence of claimant's low back injury.

SAIF acknowledges that it cannot prevail on its second assignment of error under our current case law. *See Barrett Business Services v. Hames,* 130 Or App 190, 881 P2d 816, *rev den* 320 Or 492 (1994). SAIF presents the assignment, nevertheless, in anticipation of favorable rulings from the Supreme Court on cases pending before it. We reject the second assignment without further discussion and turn to the first.

Under ORS 656.005(7)(a)(A), a condition is not compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.[1] In *Dietz v. Ramuda,* 130 Or App

---

[1] ORS 656.005(7)(a)(A) provides:

"No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

397, 882 P2d 618, *rev dismissed* 321 Or 416 (1995), we interpreted a similar statute, ORS 656.005(7)(a)(B),[2] to require the determining body to evaluate the relative contribution of the causes of an injury or disease to decide which is the *primary* cause. *Id.* at 401. Although in *Dietz* we were interpreting ORS 656.005(7)(a)(B), which applies to situations in which a work-related injury combines with a preexisting condition, the same reasoning applies to consequential conditions under ORS 656.005(7)(a)(A).

SAIF made two arguments below about the causal relationship between the treatment of claimant's back pain and his cervical condition. First, it argued that there was insufficient evidence to establish that the back treatment had caused claimant to fall and, hence, to suffer the herniated cervical disc. Second, it argued that, even if the back treatment had caused the herniated disc, there was insufficient evidence to establish that the herniated disc was the major contributing cause of claimant's cervical condition. In SAIF's view, the herniated disc had combined with the preexisting degenerative changes in claimant's cervical spine to cause claimant's condition and there was insufficient medical evidence to establish that the herniated disc was the primary cause of that condition.

On review to us, SAIF has abandoned its argument about the cause of the fall, accepting, for these purposes, that the back treatment caused the herniated disc. That means that SAIF's challenge to the compensability of claimant's cervical condition depends on the proposition that the herniated disc combined with the degenerative changes to claimant's cervical spine to cause the condition, because only then would the Board be required to do what SAIF claims that the evidence is insufficient to permit it to do, which is to weigh the relative contribution to the condition of the herniated disc and the degenerative changes.

---

[2] ORS 656.005(7)(a)(B) provides:

"If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

The ALJ found, however, and the Board accepted her finding, that "the record is not persuasive [that] the pre-existing degenerative spondylosis was a causal factor in [claimant's cervical] symptoms or the need for surgery." The Board restated that point in its order supplementing the ALJ's opinion:

> "Prior to and during surgery, Dr. Grewe noted the presence of preexisting degenerative changes at C4-5 and 5-6. Nevertheless, Dr. Grewe attributed claimant's condition to 'acute' herniations at C4-5 and 5-6."

Taken together, those statements indicate that the Board found that the herniated disc did *not* combine with the degenerative changes to cause the cervical condition for which claimant sought treatment. We conclude that there is substantial evidence to support that finding. In light of that finding, the Board did not need to weigh the herniated disc against the degenerative changes to determine which was the primary cause of claimant's cervical condition. Consequently, the Board did not err in concluding that the back treatment and resulting disc herniation was the major contributing cause of the condition.

Affirmed.