Argued and submitted May 7, affirmed July 23, 2014

In the Matter of the Compensation of
Christopher J. Camarena, Claimant.

## SAIF CORPORATION
and City of Prairie City,
*Petitioners,*

*v.*

## Christopher J. CAMARENA,
*Respondent.*

Workers' Compensation Board
120026M; A152627

332 P3d 341

Holly C. O'Dell argued the cause and filed the briefs for petitioners.

Edward J. Harri argued the cause for respondent. With him on the brief was Philip H. Garrow.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Lagesen, Judge.

LAGESEN, J.

## LAGESEN, J.

SAIF Corporation seeks review of orders of the Workers' Compensation Board holding that claimant is entitled to temporary disability benefits under ORS 656.278(1)(b) and awarding claimant attorney fees against SAIF under ORS 656.382(2) on reconsideration of the order awarding temporary disability benefits. SAIF contends that the board's finding that claimant's treating physician authorized temporary total disability "for * * * curative treatment" is not supported by substantial evidence in the record and that ORS 656.382(2) did not authorize the board to award attorney fees to claimant in connection with SAIF's request for reconsideration of the board's own-motion order awarding temporary disability benefits to claimant. We affirm.

## I.   BACKGROUND[1]

Claimant suffered a compensable left ankle injury in March 2003 while at work for a company insured by SAIF. On August 15, 2011, claimant's left ankle gave out, and, as a result, claimant suffered an injury to his back. Claimant reported the injury to his attending physician, Dr. Vaughan, the next day. Claimant and Vaughan filled out a Workers' Compensation Division Form 827, "Worker's and Physician's Report for Workers' Compensation Claims." Vaughan made several findings on the form, including that claimant's mid back was injured, that it was tender, that spasms in his back were likely, that claimant's injury was not medically stationary, and that claimant was authorized for temporary disability with full release from work at least until claimant's follow-up appointment 10 to 14 days later. Vaughan also prescribed a treatment plan of "pain pills, muscle relaxers, ice, [and] heat." Vaughan did not write anything in the section of the form asking for a "[p]alliative care plan/justification."

Vaughan continued treating claimant for several months. At one of his appointments with Vaughan, on October 11, 2011, claimant and Vaughan completed another Form 827 in which claimant reiterated how he was injured,

---

[1] The following facts are drawn from the findings in the board's order, to the extent that SAIF does not contest those findings on review, *see Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995), and from the record.

and Vaughan again noted that claimant's injury was not medically stationary, continued the authorization of full release from work, and again left blank the section of the form for describing a palliative care plan. Vaughan referred claimant for an MRI on October 14, 2011, which showed no significant structural damage, but did indicate myofascial spasms.

A month later, Vaughan authorized claimant's return to light-duty work, prescribing "no heavy lifting (10 lbs or less). No prolonged standing. Limited bending and twisting." On November 21, 2011, Vaughan responded to a request for information about claimant's condition from SAIF. In her response, Vaughan noted that claimant was not yet medically stationary, that he had been referred to physical therapy, and that, if claimant continued to show no improvement, she was considering referring him to a physical medicine and rehabilitation specialist. On February 6, 2012, Vaughan released claimant "back to work at his own discretion."

Two days later, claimant began treatment with Dr. Wagner, a physical medicine and rehabilitation doctor, following a referral by Vaughan. Wagner noted that claimant's pain ranged from a four out of 10 to a 10 out of 10 and that his pain was alleviated by "sitting in his recliner, pain medications, chiropractic manipulation, massage, [and use of a] TENS unit."[2] Wagner further noted that he "would've expected the strain, by definition, to be resolved" by the time of the appointment. Wagner prescribed a SPECT scan[3] "to evaluate for a hot facet/capsular strain which may be the culprit for his delayed healing," but if that scan came back negative, Wagner believed that 12 visits for "aggressive rehabilitation" could bring about "case closure without permanent restrictions or permanent partial disability based on the accepted thoracic strain." Claimant went back

---

[2] "TENS" stands for transcutaneous electrical nerve stimulation. A TENS unit uses low-voltage electric current to relieve pain, typically back pain.

[3] "SPECT" stands for single-photon emission computerized tomography. A SPECT scan typically is used to create 3-D pictures of organs or other soft tissue so that a doctor can assess how the organs or soft tissue are functioning. A SPECT scan can also be used to diagnose bone abnormalities, such as fractures, tumors, or inflammation.

to Wagner for a follow-up on March 7, 2012, after getting the SPECT scan. According to Wagner, the SPECT scan results were "reassuring," which led Wagner to opine that claimant's ongoing pain was the result of "body habitus and inadequate rehabilition." Wagner recommended aggressive rehabilitation and that claimant discontinue use of opioids "as patient is past the acute phase of the injury."

Vaughan saw claimant two days later, on March 9, 2012. Vaughan noted that the SPECT scan results "showed no pathology" and diagnosed claimant with thoracic strain and myofascial pain "secondary to the on the job injury." She further noted that claimant had been feeling better after using the TENS unit and going to physical therapy.

On March 13, 2012, claimant sought own-motion relief from the board due to SAIF's failure to award claimant temporary disability benefits for the new or omitted medical condition of a mid-back strain. Claimant also sought penalties and penalty-related attorney fees under ORS 656.262(11)(a), which provides for penalties and related attorney fees if the carrier "unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim." ORS 656.262(11)(a). The board granted relief, concluding that claimant was entitled to temporary disability benefits for the new or omitted medical condition under ORS 656.278(1)(b). The board declined to award penalties or related attorney fees. Board member Langer dissented.

SAIF sought reconsideration of the board's determination that claimant was entitled to temporary disability benefits, which the board ultimately denied. The board also awarded claimant attorney fees on reconsideration under ORS 656.382(2). Board member Langer continued to dissent on the issue of whether claimant ought to be awarded temporary disability benefits. SAIF then sought reconsideration again, arguing that ORS 656.382(2) did not authorize attorney fees on reconsideration of an own-motion order of the board. The board disagreed.

SAIF timely sought review of the board's orders in this court. In its first assignment of error, SAIF contends

that the board's finding that Vaughan's authorization of temporary disability was "for curative treatment" is not supported by substantial evidence and that, consequently, claimant is not entitled to temporary disability benefits under ORS 656.278(1)(b). In its second assignment of error, SAIF challenges the award of attorney fees to claimant, arguing that the board misconstrued ORS 656.382(2) when it concluded that that statute authorized it to award attorney fees to claimant on a carrier's request for reconsideration of an own-motion order of the board.

## II. STANDARD OF REVIEW

We review the board's determinations of legal issues for errors of law, and its determinations of factual issues for substantial evidence. ORS 183.482(8)(a), (c); *Jackson County v. Wehren*, 186 Or App 555, 557, 63 P3d 1233 (2003). "Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding." *Wehren*, 186 Or App at 557. We review the board's interpretation of a statute for legal error. *See State v. Spainhower*, 251 Or App 25, 27, 283 P3d 361 (2012) (stating standard of review for questions of statutory interpretation).

## III. ANALYSIS

### A. *Substantial evidence*

SAIF first contends that the board's finding that claimant's physician authorized temporary disability "for *** curative treatment" is not supported by substantial evidence and that, as a result, the board erred in awarding temporary disability benefits to claimant under ORS 656.278(1)(b).[4] We disagree.

---

[4] ORS 656.278(1) provides, in part:

"Except as provided in subsection (7) of this section, the power and jurisdiction of the Workers' Compensation Board shall be continuing, and it may, upon its own motion, from time to time modify, change or terminate former findings, orders or awards if in its opinion such action is justified in those cases in which:

"* * * * *

"(b) The worker submits and obtains acceptance of a claim for a compensable new medical condition or an omitted medical condition pursuant to ORS 656.267 and the claim is initiated after the rights under ORS 656.273 have expired. In such cases, the payment of temporary disability compensation in accordance with the provisions of ORS 656.210, 656.212(2) and 656.262(4)

As we explained in *Butcher v. SAIF Corp.*, 247 Or App 684, 689, 270 P3d 385, *rev den*, 352 Or 25 (2012), ORS 656.278(1)(b) authorizes the board to modify a prior award on its own motion "when, after the claimant's aggravation rights have expired, a medical condition is accepted for the first time." Under those circumstances, "as authorized by the worker's attending physician, the worker is entitled to temporary disability benefits for the time that the worker is disabled due to hospitalization, surgery, or other curative treatment, until the worker becomes medically stationary." *Butcher*, 247 Or App at 689. The board has determined, in this case and others, that "curative treatment" under ORS 656.278(1)(b) means "treatment that relates to or is used in the cure of diseases, tends to heal, restore to health, or to bring about recovery."

On review, SAIF accepts the board's definition of "curative treatment" under ORS 656.278(1)(b), and does not argue that the legislature intended for the term to have a different meaning. Accordingly, for purposes of this case, we too accept the board's definition of "curative treatment." We focus instead on the specific issues raised by SAIF: whether the evidence in the record would permit a reasonable person to find that (1) the treatment prescribed by claimant's attending physician was "curative" and (2) claimant's attending physician's authorization of temporary disability was "for" that treatment. We conclude that substantial evidence supports both of the board's findings.

With respect to the board's finding that the treatment prescribed by claimant's attending physician was "curative," the record easily would permit a reasonable person to find that the treatment prescribed by Vaughan related to bringing about claimant's recovery from his back strain. As noted, the record reflects that Vaughan determined that claimant was not medically stationary at claimant's initial appointment, supporting the inference that claimant's

---

may be provided from the time the attending physician authorizes temporary disability compensation for the hospitalization, surgery or other curative treatment until the worker's condition becomes medically stationary, and the payment of permanent disability benefits may be provided after application of the standards for the evaluation and determination of disability as may be adopted by the Director of the Department of Consumer and Business Services pursuant to ORS 656.726[.]"

condition was one that could change and, in fact, improve with treatment. The record further reflects that Vaughan prescribed "pain pills, muscle relaxers, ice, [and] heat," and directed that claimant should continue to see her, permitting the finding that the purpose of the treatment was to help claimant heal, and that Vaughan intended to monitor that healing process. The record also shows that Vaughan did not make a "palliative care plan" for claimant, again supporting the inference that the purpose of the treatment was to heal claimant, rather than to provide palliative care.

Other evidence in the record only serves to underscore that a reasonable person could find that claimant's treatment was curative treatment. Specifically, the records of claimant's subsequent visits with Vaughan and with Wagner (summarized above) reflect that claimant's condition was not yet medically stationary,[5] that both expected that claimant's condition would improve, and that both were trying to identify treatment plans that would lead to the improvement of his condition. In other words, the record shows that the objective of claimant's course of treatment was to help him recover from his back strain.

SAIF does not appear to argue that the above evidence would not permit a finding that the purpose of the prescribed treatment was to make claimant better. Instead, SAIF argues the record also must contain evidence from a doctor explicitly opining that a course of treatment is curative (rather than palliative or diagnostic) in order to permit a finding by the board that the treatment is curative. In other words, in SAIF's view, whether treatment is "curative treatment" is a medical question that can be established only through expert medical opinion.

We reject that argument. The purpose of a particular medical treatment—that is, whether it is curative, palliative, or diagnostic—is something that an ordinary person does not necessarily require the assistance of medical expertise to understand. Cf. *Uris v. Compensation Department*, 247 Or 420, 427 P2d 753 (1967) (holding that,

---

[5] "'Medically stationary' means that no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.006(17).

in "uncomplicated" cases, medical testimony is not required to establish that precipitating workplace event was the cause of the claimant's injury). Although we can envision instances in which the board will not be able to determine whether a particular course of treatment is curative without specific medical evidence on that point—certainly some conditions and treatments will be beyond the range of an ordinary person's understanding and experience—this is not such a case. Here, claimant suffered a back strain that was diagnosed as nonstationary and was treated through means familiar to ordinary people. Specific medical testimony that the purpose of that treatment was to heal claimant was not required to permit the finding that the treatment was curative in nature, in light of all the other evidence showing that the point of claimant's treatment was to help him recover.

Substantial evidence also supports the board's finding that Vaughan's authorization of temporary disability was "for" the curative treatment that she prescribed for claimant. Although SAIF correctly observes that Vaughan did not expressly state that she was authorizing a disability release from work "for" the treatment that she had prescribed, the record nonetheless would permit a reasonable person to find that the release was "for" the treatment. Vaughan's temporary disability authorization coincided with her ongoing treatment of claimant for a condition that was not medically stationary, and the particular treatment plan that Vaughan prescribed—pain pills, muscle relaxers, ice, and heat—was one that would significantly interfere with a person's ability to work (or so a reasonable person could find). Moreover, as the board observed, the record contains no contrary evidence that would compel a finding that temporary disability was authorized for a different purpose. Under those circumstances, a reasonable person could find, as the board did, that Vaughan's authorization of temporary disability was "for" the curative treatment that she prescribed.

B. *Attorney fees*

SAIF's second assignment of error challenges the board's conclusion that claimant is entitled to carrier-paid attorney fees under ORS 656.382(2) in connection with SAIF's request for reconsideration of the board's own-motion

order. SAIF argues that ORS 656.382(2) does not apply to requests for reconsideration of the board's own-motion orders because the statute, by its terms, authorizes fees only on "a request for hearing, request for review, appeal or cross-appeal to the Court of Appeals or petition for review to the Supreme Court" and does not mention requests for reconsideration of the board's own-motion decisions. *See* ORS 656.382(2). The board concluded otherwise, construing the phrase "request for review" broadly to encompass a request for reconsideration of an own-motion order.

Given our disposition of SAIF's assignment of error challenging the award of temporary disability benefits, we need not resolve at this time whether ORS 656.382(2) authorizes attorney fees on a carrier's request for reconsideration of an own-motion order. That is because resolution of that question will have no practical effect on SAIF under the circumstances of this case. Even if claimant was not entitled to fees under the statute at the time that the board awarded them, as a result of this appeal, claimant is now entitled to attorney fees for legal services provided in response to SAIF's request for reconsideration.

Specifically, ORS 656.382(2) provides:

"If a request for hearing, request for review, appeal or cross-appeal to the Court of Appeals or petition for review to the Supreme Court is initiated by an employer or insurer, and the Administrative Law Judge, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, or, through the assistance of an attorney, that an order rescinding a notice of closure should not be reversed or the compensation awarded by a reconsideration order issued under ORS 656.268 should not be reduced or disallowed, the employer or insurer *shall* be required to pay to the attorney of the claimant a reasonable attorney fee in an amount set by the Administrative Law Judge, board or the court for legal representation by an attorney for the claimant *at and prior to* the hearing, review on appeal or cross-appeal."

(Emphases added.) In *SAIF v. DeLeon*, 352 Or 130, 143, 282 P3d 800 (2012), the Supreme Court held that under ORS 656.382(2),

"when a claimant obtains an award of compensation and an insurer initiates *one of the listed forms* of request for review of that award before *one of the listed tribunals,* and the final tribunal to consider the issue determines that the award should not be disallowed or reduced, the claimant is entitled to attorney fees incurred in representation *at and prior to* the final hearing."

(Emphases added.)

That means that claimant is now entitled to attorney fees on SAIF's request for reconsideration, even if claimant was not entitled to those fees before. SAIF, the insurer, initiated this appeal. We have decided that the challenged award of compensation to claimant should not be reduced. As a result of our decision, ORS 656.382(2), as construed in *DeLeon,* mandates "a reasonable attorney fee * * * for legal representation by an attorney for claimant at *and prior to*" this appeal. (Emphasis added.) Consequently, claimant is now entitled to attorney fees for proceedings prior to this appeal, including the attorney fees incurred "prior to" this appeal on SAIF's request for reconsideration. Because SAIF does not dispute the reasonableness of the fees awarded, or otherwise contest the award, we do not disturb it.

## IV. CONCLUSION

For the foregoing reasons, we affirm the orders of the board.

Affirmed.