Argued and submitted March 9, 2021, affirmed March 2, 2022

In the Matter of the Compensation of
Donald J. Dugas II, Claimant.

Donald J. DUGAS II,
*Petitioner,*

*v.*

LIBERTY MUTUAL INSURANCE COMPANY
and Voith Hydro,
*Respondents.*

Workers' Compensation Board
1705720; A171232

507 P3d 752

Claimant seeks review of a Workers' Compensation Board (board) order affirming his employer's denial of his "new or omitted medical condition" claim for a left rotator cuff tear as a "consequential condition" of his original compensable work-related hip injury. Claimant argues on appeal that the board misstated the issue by examining his entire fall history in its analysis and that the board erred by concluding that his doctor's opinion was unpersuasive. Employer argues that the board's order is supported by substantial evidence and reason. *Held*: The board's order was supported by substantial evidence and reason.

Affirmed.

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Laura Newsom argued the cause and filed the brief for respondents.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Affirmed.

_____
* Lagesen, C. J., *vice* DeHoog, P. J.

**MOONEY, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board (board), dated May 8, 2019, affirming employer Voith Hydro's denial of his "new or omitted medical condition" claim for left rotator cuff tear as a "consequential condition." ORS 656.005(7)(a)(A). Employer asks us to affirm the board's order as supported by substantial evidence and reason. For the reasons that follow, we agree with employer and therefore affirm the board's order.

## STANDARD OF REVIEW

The board's determination that claimant's rotator cuff tear is not a consequential condition involves findings of fact, which we review for substantial evidence. ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make the finding." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 294 n 1, 787 P2d 884 (1990) (quoting ORS 183.482(8)(c)). "As part of our review for substantial evidence, we also review the board's order for substantial reason—that is, we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." *Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015). We take the following facts from the record. ORS 183.482(7).

## FACTUAL HISTORY

Claimant injured his right hip in 2006 when, while working as a millwright, he tripped and "did the splits." He developed "traumatic arthritis" in that hip as well as narrowing of the hip joint. Dr. Lorber concluded that claimant's hip condition was medically stationary in January 2014, noting also that claimant reported "some instability, where his hip will 'collapse' after an acute pain. He has had near falls, but no complete falls."

In September 2014, in an effort to have his child support obligation adjusted, claimant emailed Dr. Wagner's office requesting that Wagner provide written verification of his hip-related disability level. In that same email, claimant mentioned as a "side note" that because of "stability issues

related to [his] hip injury," he had fallen six weeks earlier and injured his left shoulder. That email is in Wagner's medical chart concerning claimant.

In February 2015, claimant was examined by Dr. Puziss, who wrote in his report:

> "The patient notes that he has fallen about 20 times over the last six to seven years. This usually occurs when his hip catches and it gives way. \*\*\* He has limped ever since his accident. In his last fall in July 2014, he was carrying groceries, slipped and fell, landing directly onto his left lateral shoulder. This was the worst injury, and he has had shoulder pain ever since."

Puziss described "the last fall in July of 2014" as "the more important of all of his falls." In his view, "[t]he left shoulder is a consequential condition," with claimant's "multiple falls" ultimately leading to "contusions and strains of the left shoulder." Puziss suspected a left rotator cuff tear, and he suggested a left shoulder MR arthrogram for further work-up of that shoulder.

In March 2015, claimant was evaluated by Dr. Dewing. Dewing's evaluation focused primarily on whether claimant needed a total right hip replacement, although it also included an evaluation of claimant's left hip, low back, and shoulders. Dewing noted that the left shoulder was "concerning for rotator cuff pathology" and that claimant had "claimed" that the shoulder condition was "a consequence of repeated falls from right hip giving way." Dewing commented that the "repeated falls from right hip giving way" were not "documented in the existing medical records" and that the injury was likely "multifactorial and not industrially related."

In June 2015, claimant was evaluated by Dr. Toal, who, like Dewing, focused on the question whether right hip replacement surgery was medically indicated, but he also evaluated claimant's shoulders and diagnosed "[b]ilateral shoulder rotator cuff tendinopathy, not industrially related." And, like Dewing, Toal commented that he could identify "no medical records diagnosing either a contusion or a strain, and he has had no treatment for these diagnoses." Toal also concluded that claimant exhibited "symptom magnification

and functional overlay" based, in part, on the exam and, in part, by comparing the exam with a surveillance tape taken of claimant refereeing a basketball game. Toal did not offer an alternative cause for claimant's shoulder condition other than to say that it was "not industrially related."

Claimant saw Dr. McCarron in July 2017. McCarron ordered an MRI of the left shoulder which, in turn, revealed tears in the supraspinatus and infraspinatus tendons. McCarron diagnosed claimant with a full thickness rotator cuff tear and biceps subluxation in the left shoulder. He recommended surgery. McCarron later opined that claimant's July 2014 fall as well as "a few other falls" that occurred earlier, "seem to have been as a result of the significant right hip pain resulting from the traumatic arthritis." In McCarron's opinion, the work-related hip injury caused claimant to fall, including the fall in July 2014, and was the major contributing cause of claimant's rotator cuff tear.

## PROCEDURAL HISTORY

Claimant's claim for compensation for his hip injury was accepted in 2006. He later made two consequential condition claims under ORS 656.005(7)(a)(A) related to his left shoulder.[1] The first claim, filed in May 2015, was for "left shoulder contusion/strain." The second claim, filed in November 2017, was for "damage to left shoulder rotator cuff from fall(s) July 2014." Each claim was denied by employer's workers' compensation insurer, Liberty Mutual (Liberty), followed by a hearing before an administrative law judge (ALJ), and a review by the board, which upheld the denial. The first board order related to the claim for "left shoulder contusion/strain." Claimant filed, and then withdrew, his petition for judicial review of that order. The board issued a second order on May 8, 2019, which concerns the claim for

---

[1] ORS 656.005(7)(a)(A) provides:

"A 'compensable injury' is an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death. An injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) An injury or disease is not compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

damage to the rotator cuff, and is from which claimant filed the petition now before us. The procedural facts underlying the shoulder contusion/strain claim and the rotator cuff tear claim are largely the same, and we describe both here to provide context for our review of the board's May 8, 2019, order.

The first hearing was in October 2016 before ALJ Lipton. On May 17, 2017, ALJ Lipton set aside Liberty's denial of claimant's "left shoulder contusion/strain" claim, and explained:

> "Claimant contends that as a result of his hip injury he falls. Sometimes he falls to the ground but usually he is able to stop himself with his left shoulder. In either event, his left shoulder has taken a beating. Dr. Wagner did not treat the condition because it was not an accepted part of Claimant's claim and Claimant had no other medical coverage. Claimant did receive acupuncture establishing that this is a condition which required treatment. Consequently, I find that Claimant has established that as a consequence of his injury he has experienced falls resulting in a left shoulder contusion/strain.
>
> "* * * * *
>
> "In reaching the above results, I note that, other than Dr. Toal's outlier opinion, no examiner has questioned Claimant's effort or credibility."

Employer appealed the ALJ's order to the board.

On December 19, 2017, the board issued an order reversing the ALJ's order. The board compared the opinion of Puziss with the opinions of Dewing and Toal and noted that Dewing and Toal had expressed concern that claimant's fall history is not "documented in the medical records." The board found from that record that claimant's report of his fall history "is not reliable." Thus, the board disbelieved claimant. It found, essentially, that Puziss had based his opinion on a fall history provided by claimant that was not credible. The board concluded:

> "It follows that the medical evidence from Dr. Puziss is not based on a complete or accurate history. *See Miller v. Granite Construction Co.*, 28 Or App 473, 478 (1977)

(medical opinion that is based on an inaccurate [history] is not persuasive).

"No other opinion supports the compensability of the left shoulder claim. Consequently, the record does not persuasively establish that the claimed left shoulder condition is compensable. *See* ORS 656.005(7)(a)(A)."

On November 2, 2017, one month before the board released its December 19, 2017, order reversing ALJ Lipton, claimant filed a new/omitted condition claim for damage to his left rotator cuff as a consequential condition. Shortly after the board issued its December 19, 2017, order, Liberty sent claimant a letter notifying him that it had "already litigated [his] alleged left shoulder injury from falls in 2014" and that it "remains denied." The parties agree that Liberty did not issue a formal denial of claimant's November 2017 new medical condition claim and that its letter became a *de facto* denial of that claim. Claimant requested a hearing on that *de facto* denial of his November 2, 2017, claim and that is what was before ALJ Jacobson in 2018.

At that hearing, the parties argued the relative merits of whether issue preclusion applied. ALJ Jacobson issued an opinion in which she concluded that issue preclusion did not apply to claimant's November 2, 2017, rotator cuff tear claim. In so ruling, ALJ Jacobson noted the unusual posture of the claim, explaining:

"This case presents an interesting issue. Claimant conceded at hearing that the facts regarding the compensability of the left shoulder rotator cuff tear condition are essentially the same as those facts presented at the prior proceeding. While claimant offered some clarification at this proceeding, I find claimant's testimony at both proceedings substantially similar. I further note that claimant appeared credible in his presentation. However, when previously presented with these same facts, the Board found that claimant's testimony was not consistent with the contemporaneous medical record and discounted the supporting medical opinion from Dr. Puziss as a result.

"While I do not find the prior litigation proceeding preclusive with regard to claimant's ability to raise[] a new medical condition claim for a left shoulder rotator cuff tear, I am not free to disregard the Board's findings with regard

to the same facts. As such, I defer to the Board's conclusion that claimant's testimony was not consistent with the contemporaneous medical record."

Accordingly, ALJ Jacobson upheld Liberty's *de facto* denial of the rotator cuff claim.

Claimant appealed ALJ Jacobson's order to the board and, on May 8, 2019, the board affirmed. The board agreed with ALJ Jacobson that the board's November 2017 order was not preclusive with regard to the evaluation of the medical record. But the board once again found claimant not credible with regard to his fall history and concluded that the opinions of the doctors relying on that history, Puziss and McCarron, were unpersuasive for having relied on an unreliable fall history. Thus, the board upheld employer's denial of the claim. Claimant's petition for judicial review of that order is now before us.[2]

### ASSIGNMENTS OF ERROR

In his first assignment, claimant contends that the "[b]oard erred in stating that the issue was whether a history of multiple falls were the cause of [claimant's] consequential left shoulder condition and its conclusion, drawn from that mistaken assertion, that the July 2014 fall is unsubstantiated in the medical record is contrary to the record as a whole." Claimant argues that the single issue identified and agreed to by the parties before the ALJ was the narrower issue of whether "a single unique fall in July 2014 caused the left shoulder rotator cuff tear." We understand claimant's argument to be that, by framing that issue too broadly, the board improperly relied on the absence of documented falls in medical records created before July 2014 to conclude that claimant did not accurately describe his fall history, making any opinion that relies on that history unreliable. We reject that argument because, as we explain below, despite the board's broad-brush approach, it addressed the issue of whether any fall in July 2014 contributed, in major part, to the rotator cuff tear.

Claimant next assigns error to "[t]he board's conclusion that Dr. McCarron's opinion was conclusory and failed

---

[2] *Issue preclusion* is not before us on review.

to rebut the opinions of [Dewing and Toal]." Although not a properly framed assignment of error, we understand claimant to contend that the board's order thus lacks substantial evidence and reason. Employer contends that substantial evidence and reasoning support the board's finding that McCarron's opinion is unpersuasive based on his reliance on a fall history not supported by contemporaneous documentation in the medical records and because McCarron did not otherwise offer an explanation for how the hip injury caused claimant's rotator cuff tear. As discussed below, we agree with the employer.

## ANALYSIS

Generally, an injury is "compensable" if it arises "out of and in the course of employment under ORS 656.005(7)" when the "work is a material contributing cause of the injury." *Coleman v. SAIF*, 203 Or App 442, 446, 125 P3d 845 (2005). However, an injury "is not compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition." ORS 656.005(7)(a)(A). Claimant has the burden to prove that a new medical condition exists and to prove that the accepted compensable injury is the major contributing cause of the new condition. *Jackson County v. Wehren*, 186 Or App 555, 559, 63 P3d 1233 (2003); *see also* ORS 656.266. Here, the rotator cuff tear is the new medical condition. No party disputes the existence of that shoulder condition. But claimant still bears the burden to prove that his work-related hip injury was the major contributing cause of the rotator cuff tear.

Where injuries are of "such a nature as to require skilled and professional persons to establish causation, expert medical evidence is necessary to meet the burden of proof." *Barnett v. SAIF*, 122 Or App 279, 282, 857 P2d 228 (1993). That burden is by a preponderance of the evidence, stated in terms of "reasonable medical probability." *See SAIF v. Gaffke*, 152 Or App 367, 371, 954 P2d 179 (1998) (expert medical opinion is required when the question of causation is a complex one). Determining whether expert testimony on the question of causation is required involves consideration of several factors: (1) whether the situation is complicated;

(2) whether symptoms appear immediately; (3) whether the worker promptly reports the occurrence to a superior; (4) whether the worker previously was free from disability of the kind involved; and (5) whether there was any expert testimony that the alleged precipitating event could not have been the cause of the injury. *Barnett*, 122 Or App at 283.

The board, in its May 8, 2019, order on review, declared that, "*because of the disagreement between medical experts*, this claim presents a complex medical question that must be resolved by expert medical evidence." (Emphasis added.) But it is the complexity of a medical issue, not the fact that medical experts disagree, that makes a question complex or that determines the need for expert medical evidence to resolve the question. This case is medically complex, but not because the doctors disagree. It is medically complex because establishing the hip injury as the major contributing cause of the rotator cuff tear requires the ability to review and understand medical records, including notes and reports of clinical examinations, surgical procedures, and imaging studies, that document conditions diagnosed and treated by physicians over the course of a decade and to assess the medical interrelationship of those conditions, if any. Expert medical testimony is required to establish whether the hip injury was the major contributing cause of the rotator cuff tear.

Because the question of medical causation is complex, we review the board's order explaining its view and treatment of the proffered expert opinions guided by these principles:[3] (a) to be persuasive, a medical opinion identifying the major contributing cause of a condition must evaluate how other potential causes might have contributed to the condition, *SAIF v. Willcutt*, 160 Or App 568, 574, 981 P2d 1288 (1999) (applying precept in consequential condition cases); (b) if there are conflicting medical opinions, the board will "place more emphasis on opinions that are well reasoned and based on the most complete relevant information," *Wehren*, 186 Or App at 559-60; (c) we review the

---

[3] *See SAIF v. Harrison*, 299 Or App 104, 112 n 3, 448 P3d 662 (2019) (explaining that the precepts governing combined condition cases and consequential condition cases are the same).

board's findings concerning expert opinions for substantial evidence, ORS 183.482(8)(c); *id.*; and (d) if there are competing expert opinions on a medical issue, we will reverse the board's decision to rely on one opinion over the other "only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the board finds the other without giving a persuasive explanation." *Id.* (quoting *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988)). Consistent with those principles, and mindful that our role is not to second-guess the board, we assess the board's evaluation of the competing medical opinions to determine the reasonableness of the board's evaluation. *SAIF v. Pepperling*, 237 Or App 79, 85, 238 P3d 1013 (2010).

Ultimately, the board concluded that McCarron's opinion, like Puziss's opinion, was unreliable because it relied on claimant's unsubstantiated report that he had "experienced numerous falls." It, therefore, discounted those opinions and did not rely upon them in reaching its conclusions. The board explained that it had undertaken its own review of the medical records and concluded that the lack of contemporaneous documentation of falls in those records did not support claimant's testimony that he "sustained multiple falls." It thus found McCarron's and Puziss's opinions unreliable because they were based on "an unsubstantiated history" of falls. In other words, the board did not believe that claimant had fallen as he said he had. According to the board, the McCarron and Puziss opinions were, thus, based on the false premise that claimant fell, and the board disregarded those opinions and "placed more emphasis" on the opinions that it found to be based on the most complete information.

To be sure, the record contains evidence from which the board might have reached a different finding about whether claimant fell as he claimed he did. As claimant notes, his September 2014 email to Wagner documented a fall in July 2014. And also, as claimant argues, physicians do not chart everything their patients say to them. But those arguments go to the weight of the evidence that the factfinder may consider in resolving the question whether claimant fell and the circumstances of such fall or falls. The presence of documentation can corroborate that the

thing documented happened, but the lack of documentation does not alone establish that the thing not documented did not happen. The question whether something happened—here, whether claimant fell in July 2014—is a question of fact. That question—whether claimant fell—is not resolved through expert medical testimony. And while the board discussed that the experts disagreed about whether claimant was telling the truth about falling, its own conclusion that he did not fall is supported by substantial evidence in the record. Given claimant's consequential-injury theory of compensability, that finding alone was enough to reasonably support the board's conclusion that claimant had failed to meet his burden of proof. A fall that did not occur cannot supply the causative link between a hip injury and a rotator cuff tear.

## CONCLUSION

The board found that claimant's reports of having fallen were unreliable and that McCarron's opinion was unpersuasive because it relied on those reports. The board's order concluding that claimant failed to establish that his rotator cuff tear was caused, in major part, by the work-related hip injury is supported by substantial evidence and reason.

Affirmed.